SOUTHERN ELECTRIC SECURITIES COMPANY *v.* STATE OF MISSISSIPPI.

[44 South., 785.]

1. CORPORATIONS. *Res judicata. Parties.*

A decree holding a corporation to be a trust and enjoining it from voting the stock of another corporation not a party to the proceeding is not *res adjudicata* as to such other corporation in a subsequent action to forfeit its charter.

2. SAME. *Trusts. Monopolies. Evidence.*

On the complaint of the state that a corporation is an illegal trust, it is proper for the courts to look through the various steps which led to its organization to discover its purpose.

3. SAME. *Rights and duties. Franchises. Surrender of control.*

Corporations, being creatures of the law and deriving their powers from it, have not all the rights and powers of individuals, and cannot surrender their franchises nor delegate their duties to others, with the freedom of an individual.

4. SAME. *Consolidation. Constituent corporations. Violating charters.*

A combination of two or more corporations for a legitimate purpose, and which is unobjectionable as a combination, may be subject to attack if a trust form is adopted, on the ground that each constituent corporation has violated some provision of its charter or some principle of the law of its creation.

5. SAME. *Monopolies. Forms of consolidation. Trusts.*

A consolidation of corporations to stifle competition, by organizing a securities corporation to hold the control of the stock of the various consolidated companies, leaving each to continue its corporate existence, is illegal.

6. SAME. *Action by state.*

Where several corporations consolidate for the purpose of stifling competition, by organizing a holding company to which a majority of their stock is transferred, the state may proceed against any of the constituent corporations organized under its laws which has violated its charter rights or the public policy of the state in entering such combination, or it may pass over the constituent corporations and proceed against the holding company, whether it be domestic or foreign, provided the holding company attempts within the state in any way to do business which the subordinate corporation could not.

7. SAME. *Separation of stockholders from corporation.*

The rule that a corporation is an entity separate and distinct from its stockholders will be disregarded when it does not subserve the ends of justice or is against public policy.

8. SAME. *Monopolies. Foreign corporation. Control.*

While the courts of Mississippi have no jurisdiction over foreign corporations confining their operations to the state in which they are created, when a corporation is organized in a foreign state to dominate a domestic corporation, which is itself engaged in business as an illegal trust, the courts of the state have authority to prevent such control by restraining the holding company from voting its stock.

FROM the chancery court of Warren county.

HON. J. S. HICKS, Chancellor.

The State, appellee, was complainant in the court below; the Securities Company, appellant, was defendant there. From a decree in complainant's favor defendant appealed to the supreme court.

The opinion of the court states the facts of the case.

*Catchings & Catchings; Charles Payne Fenner* and *Smith, Kirsh & Landau,* for appellant.

*R. V. Fletcher,* attorney-general; *Anderson & Voller,* and *Alexander & Alexander,* and *Geo. B. Power,* for appellee.

[The briefs of counsel have been misplaced, and have never come to the hands of the reporter.]

Argued orally by *Oliver W. Catchings,* and *Chas. P. Fenner,* for appellant, and by *C. H. Alexander,* for appellee.

CALHOON, J., delivered the opinion of the court.

The state of Mississippi, upon the relation of the district attorney, exhibited its original, and subsequently its amended, bill in the chancery court of Warren county against the appellant herein. Primarily the purpose of the bill was to enjoin the defendant the Southern Electric Securities Company from voting in a stockholders' meeting of the Vicksburg Railway & Light Company, a domestic corporation, and to enjoin the said defendant from in any manner controlling, operating, managing, or reorganizing the said Vicksburg Railway & Light Company, or from electing any officers of the company, or from doing anything in the management, control, or operation thereof. The ground of attack is that the Southern Electric Securities Company, a corporation organized under the laws of the state of New Jersey, is an illegal trust, exercising its corporate powers in this state in violation of its statutes and policy. The defendants to the original bill were the Southern Electric Securities Company, the Interstate Trust & Banking Company, a corporation chartered under the laws of the state of Louisiana, and Lynn H. Dinkins, H. M. Young, J. H. Levy, Sam Henderson, E. M. Loeb, K. K. McLaurin, Charles Levy, R. S. Sternes, and R. J. Wood. By the amended bill Sr. R. Hughes and C. P. Fenner were made defendants.

The bill charges that on the 20th of May, 1903, a written contract was entered into between Sol Wexler, W. B. Rogers, J. H. Levy, and S. S. Bullis, severally, but not jointly, as parties of the first part, and Harry K. Johnson, party of the second part, whereby it was recited that the parties of the first part owned and controlled $375,000 of the $500,000 of the capital stock of the Southern Light & Traction Company, which was a corporation owning and operating the street railroad, gas, and electric light properties in Natchez, Miss., and

that Harry K. Johnson owned or controlled $375,000 of the $400,000 capital stock of the Vicksburg Railway & Light Company, which was a corporation owning and operating a street railway and electric light plant in the city of Vicksburg; that it was agreed that these parties should organize a securities holding company under the laws of the state of New Jersey, with a capital stock of $100,000 or more, to which company all of said stock owned by the said parties, together with all the securities held, owned, and controlled by the Natchez and Vicksburg, Miss., street railroad companies, should be turned over, in consideration of which each of the said parties should receive one-fifth of the capital stock of such securities holding company. A copy of the contract referred to was made an exhibit to the bill, by which it appears that Johnson agreed, in the event he should gain an option on, or acquire the ownership of, the balance of the capital stock of the Beaumont Traction Company, over and above that then owned by him, he should, at the option of the said securities holding company, sell and transfer the same to that company at the price paid by him. The bill further averred that the said parties did obtain a controlling interest in the Beaumont Traction Company, which was a corporation operating street railroads and other industries in the city of Beaumont, in the state of Texas, and in a like corporation engaged in a like business in the city of Jennings, in the state of Louisiana, and under an arrangement such as that described in the said contract agreeing to turn over and transfer to the said securities holding company said stock and securities. The bill averred that the purpose and intent of the contract was to place within the power of the said securities holding company and create in it a monopoly in the running and operating of any of the street railroads or electric light companies in any of the states mentioned in said contracts, and to put it in the power of said securities holding company, or a large majority of the stockholders thereof, to dictate and control the management and business of the Vicksburg Railway &

Light Company and the other like corporations in the other states mentioned, and to create a pool, trust, combination, or understanding for the purpose of regulating and fixing the price of fares on the street railways, and the price of electricity for power and illuminating purposes, and the price of the stocks, bonds, and securities held, owned, or operated by said Vicksburg Railway & Light Company and the other corporations mentioned. The bill averred that, in pursuance of said contract and the other agreements as stated, there was organized under the laws of New Jersey a securities holding company under the corporate name of the Southern Electric Securities Company, to which a majority of the capital stock of the said Vicksburg Railway & Light Company, the Southern Light & Traction Company the Beaumont Traction Company, and the Jennings Company was transferred and turned over, to be used in accordance with said contract, and that the said Southern Electric Securities Company, in pursuance of said agreement, issued its stock. The bill further alleged that the Interstate Trust & Banking Company, a Louisiana corporation, has acquired and now holds and controls a large part of the capital stock of the Southern Electric Securities Company and of the other corporations mentioned, and, in connection with the Southern Electric Securities Company, many of whose officers are also the officers, agents, and representatives of the Interstate Trust & Banking Company, has taken control of the operation and business of the Vicksburg Railway & Light Company, and has called a stockholders' meeting for the purpose of electing officers and taking other steps looking to the management and control of the said corporation. The prayer of the bill is that an injunction may be issued restraining the Southern Electric Securities Company from voting as a stockholder in said meeting, or taking any part in the management, control, or operation of the Vicksburg Railway & Light Company. The bill also prays that on final hearing the injunction shall be made perpetual, and that all the pains and penalties prescribed

by the act of 1900 and by the Code of 1906 against trusts and combines shall be adjudged against said defendants and each of them. An injunction was issued as prayed.

The defendants, answering the bill, admitted the execution of the contract, Exhibit A thereto. They admit that defendants Wexler, Rogers, Levy, and Bullis, after the execution of the said contract (Exhibit A), obtained a controlling interest in the Beaumont Traction Company, a Texas corporation operating a street railway in the city of Beaumont, and in a like corporation in the city of Jennings, in the state of Louisiana, and in pursuance of an arrangement similar to that set forth in said contract (Exhibit A). The defendants aver that the said contract (Exhibit A) was made in the state of Louisiana, and was a perfectly valid and lawful contract under the laws of that state, and claim that no statute of the state of Mississippi could have any extraterritorial effect, so as to invalidate such contract, and that, if there is such statute in the state of Mississippi, it is unconstitutional. The defendants also set up that the Southern Electric Securities Company is a corporation created under the laws of the state of New Jersey, and file a copy of the act of incorporation as an exhibit to their answer. Defendants claim that by said charter the Southern Electric Securities Company has corporate authority conferred upon it to acquire by purchase, subscription, or otherwise, and to hold as an investment, any bonds, debentures, or other securities as evidence of indebtedness, or any shares of capital stock created or issued by any other corporation or corporations of the state of New Jersey or of any other state, territory or country, and, while the owner of such stock, to exercise all the rights, powers, and privileges of ownership, including the right to vote the same. The defendants claim that under its charter the Southern Electric Securities Company had the right to acquire the stocks of the various corporations mentioned, and aver that such stock was not acquired or purchased within the territorial limits of the state of Mississippi. They deny that the statutes of this

state prohibit, or can be construed to prohibit, such acquisition of stock by said corporation, and, if such is their nature, that they are unconstitutional and void. The defendants aver that the stock in these companies was personal property, assignable under their corporate by-laws and charters, and that the owners thereof had the right to transfer the same, and the Southern Electric Securities Company, under its charter, had the power and authority to purchase the stock. They deny that the statutes of Mississippi have or can have any extraterritorial force. They deny that their purpose or true construction is to prohibit such sale and purchase, and aver that, if such is their purpose and proper construction, the same are unconstitutional and void, as depriving the holders of said corporate stock desiring to sell the same, and the Southern Electric Securities Company desiring to purchase the same, of valuable property rights. The defendants admit that the Southern Electric Securities Company would, and will, if permitted, vote as a stockholder in the corporate meetings of the Vicksburg Railway & Light Company. The defendants admit that certain stockholders of the Southern Electric Securities Company entered into a contract by which they agreed to transfer the stock held by them to the Interstate Trust & Banking Company as a trustee, and selected a certain stockholders' committee, with authority to direct the trustee in reference to the vote of the stock. That contract is filed as an exhibit to the answer. They also admit that the Interstate Trust & Banking Company is a stockholder in the Southern Electric Securities Company. The defendants deny unlawful confederation and combination, and aver that in the nature of things it is not possible for street railroads in the states of Texas and Louisiana, and in different cities in the state of Mississippi, to be competitors the one with the other.

A motion was made to dissolve the injunction, on the hearing of which testimony was offered, some of which was admitted by the court, and some of which seems to have been excluded. The analysis of this evidence made by counsel for the appellant

seems to be accurate, and is accepted by counsel for the appellee as correct. From this analysis we make the following statement of the evidence offered before the chancellor: " In the year 1901, one Harry K. Johnson built, and was chief owner, of a street railway in Natchez, which was known as the Natchez Electric Street Railway & Power Company. At that time there were in Natchez companies known as the Natchez Gaslight & Power Company and the Natchez Light, Power & Traction Company, respectively; the former being engaged in the manufacture and selling of illuminating gas, and the latter in that of manufacturing and selling electricity for light and power purposes. On September 16, 1902, the Natchez Light, Power & Traction Company conveyed to one S. S. Bullis all of the property owned by it in the city of Natchez, and on September 30, 1902, Bullis conveyed the same property to the Natchez Electric Railway & Power Company. On February 28, 1903, the Natchez Gaslight & Power Company conveyed all of its property to H. G. Dufour, and, on March 24, 1903, Dufour conveyed the same property to S. S. Bullis. On March 31, 1903, the Natchez Electric Street Railway & Power Company conveyed all its property to S. S. Bullis; and on April 21, 1903, Bullis conveyed to the Southern Light & Traction Company all of the property theretofore purchased by him as aforesaid. On May 20, 1903, Wexler, Rogers, Levy, and Bullis entered into the contract with Harry K. Johnson which appears in the record as Exhibit A to the original bill of complaint, whereby it was agreed that the securities holding company should be organized under the laws of the state of New Jersey, and that there should be conveyed to this company, by the various parties to the agreement, certain shares of stocks and certain bonds owned by them in the Southern Light & Traction Company, a corporation which was then operating a street railway, gas, and electric light plant in the city of Natchez, and certain shares of the capital stock and certain bonds of the Vicksburg Railway & Light Company, a corporation which was

then operating a street railway and electric light plant in the city of Vicksburg, Miss.; and it was further agreed that, should the said Johnson acquire the ownership of certain stock in a corporation known as the Beaumont Traction Company, it should also be conveyed to the said securities holding company. By the terms of the agreement the securities holding company was to become the absolute owner of the stock and bonds in its own right, and not as trustee for any other person, and, in return therefor, was to deliver to the parties to the agreement certain of its own stock and bonds. Subsequently it was agreed that certain of the stock and bonds of the corporation operating a street railway company at Jennings, La., should be conveyed to the securities holding company, which should deliver to the owners of the said stock certain of its own stock and bonds in payment therefor. In accordance with this agreement the Southern Electric Securities Company was on July 6, 1903, organized in New Jersey, with full power under its charter and the laws of New Jersey to own the stocks and bonds of other corporations. The various stocks and bonds specified by the agreement were, in effect, transferred to the Southern Electric Securities Company, which issued its own stocks and bonds in payment therefor as stipulated. As the result of these various transactions the Southern Electric Securities Company became the holder of about three-fourths of the capital stock of the Vicksburg Railway & Light Company and of the Southern Light & Traction Company, besides some of the bonds of both companies. Early in the year 1903 certain persons in the city of Natchez, being dissatisfied with the rate charged for electricity, conceived the plan of building another electric light plant. In order to induce them to abandon this enterprise a written contract, dated June 1, 1903, was entered into with them by the Southern Light & Traction Company, by the terms of which these persons were to receive $30,000 of the capital stock of that company and were to be furnished with electricity at specified rates, being less than the amount charged to the

public. This written contract, it is said by counsel for the appellant, does not appear to have been authorized by the stockholders or directors of the Southern Light & Traction Company; but there is nothing in the record to indicate that it was not, and, so far as the record discloses, the terms of the contract were carried out by that company. In addition to the facts analyzed and stated by counsel for appellant, it is further shown by the testimony of Mr. Johnson that the receipts from the Beaumont, Jennings, and Natchez railroads were paid into the Southern Electric Securities Company, and used by that company as its property; the same being applied to the payment of its debts.

The motion to dissolve the injunction was submitted and denied, and from this action of the chancellor the present appeal is prosecuted ' to settle the principles of the case.' "

It is said by counsel that the chancellor was controlled in his decision by the case of *Woodbury* v. *McClurg,* 78 Miss., 831; 29 South., 514, but for which decision he would have dissolved the injunction. It is unnecessary to the present decision for us to consider the advisory opinion in the *Woodberry case.* In that case the effort was by mandamus to compel the attorney-general of the state to give an affirmative opinion upon the validity of a charter which had, under the statute, been submitted to him for his professional opinion as the law officer of the state. While the court denied its jurisdiction to pass authoritatively upon the question, it nevertheless expressed the opinion that, under our general act of incorporation, no charter could be given to one corporation authorizing it to become a stockholder in another. It is not necessary to decide whether the opinion in the *Woodberry case* is authoritative, or, if it is, whether it should be overruled. Quite apart from anything said in that case, we think the decree of the court below should be affirmed.

It is said by counsel for appellant that the pleadings do not present an issue under which evidence is admissible in reference

to the transaction antedating the agreement of May 20, 1903, and having relation to the organization of the Southern Light & Traction Company. It is argued that, aside from matters relating to the organization of that company, nothing is shown except a transfer to the Southern Electric Securities Company of stocks in various noncompeting corporations, and that no public policy or statute of this state forbids anything which is shown to have been done or intended to be done in relation to such noncompetitive companies. The subject of trusts and combinations presents so many varied phases, the discussion of which would protract this opinion, that we confine ourselves to a single controlling feature of the case. We do not decide that the effect of the contract of May 20, 1903, and what was done under it, was the creation of a partnership between the various corporations of this and other states, the stock of which was transferred to the Southern Electric Securities Company. There is evidence in the record suggestive of the fact that the securities company dealt with the income of these various corporations as its own, not distributing the same to the stockholders of the various companies, but devoting it to the payment of its own debts. The Southern Light & Traction Company is not a party to this suit. There is no effort on the part of the state to annul the charter of that company or of the other corporations whose assets were secured by it. What is now said is, upon well-settled principles, not conclusive as against that company, if any action shall be taken by the state to forfeit its charter. We are, however, of opinion that, in determining the question whether the Southern Electric Securities Company can perform any corporate function in this state, the court, under the averment of the bill that it is an illegal corporation and trust, may look through the various steps which led to the organization of that company to discover the reason of its organization, the purposes for which it was organized, and whether or not those purposes conflict with our statute.

The argument of counsel that a public corporation may do

whatever an individual may do is not true in its broadest aspect. An individual owns property unaffected by a necessity to use it in the performance of duties in which the public have an interest, and is not restrained by charter limitations. A combination of two or more corporations for legitimate purposes, and which is unobjectionable as a combination, may be subject to attack, if a trust form is adopted, upon the ground that each constituent corporation has violated some provision of its charter or some principle of the law of its creation. " Corporations being creatures of the law, and deriving their right to exist and all their powers from the law, they are debarred from exercising many of the privileges of an individual. They cannot surrender their franchises, nor delegate their duties to others, with the same freedom that an individual can abandon his occupation and turn over his business." Eddy on Combinations, § 606.

It is manifest from the record that the several competing corporations in the city of Natchez transferred to the Southern Light & Traction Company, through Bullis, the intermediary, their corporate assets, and that the organization of that corporation and the taking over of such assets was for the purpose of stifling competition and putting the lighting plants at Natchez in the hands of an illegal monopoly. The Southern Electric Securities Company was organized for the purpose, among other things, of taking over a majority of the stock of the Southern Light & Traction Company and of controlling the business of that corporation as a majority stockholder. The method, so frequently adopted in corporate combinations, of keeping alive the corporate existence of what are practically the constituent companies, and fixing the controlling powers over them in trustees, or another dominating corporation, instead of protecting against assailment, subjects the scheme, as pointed out by Mr. Eddy, to new hazards, and is the most vulnerable of all forms; for each of the constituent members may be attacked for participation in the unlawful scheme in

the court having jurisdiction in the locality of its existence, and the trust body itself may be proceeded against in the state in which it exists, or in the courts of other states to whose jurisdiction it may be amenable. Eddy on Combinations, § 607.

The state may proceed against any single corporation organized under its laws which violates its charter rights or the public policy of the state, or it may pass over such corporation and proceed, if it will, against a dominating corporation, domestic or foreign, which, in this state, attempts in any way to prosecute the business which the subordinate corporation could not. The distinction insisted upon by counsel for appellant between the conduct of the corporation and of its stockholders is of importance and of controlling influence when the question involved arises between the corporation and its stockholders or between the corporation, or its stockholders, and third persons; but this distinction rests upon a mere fiction that the corporate existence and corporate functions are distinct from that of stockholders. This fiction is introduced for convenience and to subserve the ends of justice; but, when invoked in support of an end subversive of its policy, should be and is disregarded by the courts. This question has been very fully considered in the case of *State* v. *Standard Oil Company,* 49 Ohio St., 137; 30 N. E., 279; 15 L. R. A., 145; 34 Am. St. Rep., 541; *People* v. *North River Refining Company,* 54 Hun (N. Y.), 354; 3 N. Y. Supp., 401; 2 L. R. A., 33; *Id.,* 7 N. Y. Supp., 406; 5 L. R. A., 386. A corporation can act only through its agents, and these are selected by the stockholders; but it is not true that the various steps leading up to the organization of the Southern Light & Traction Company were not the steps of the corporation whose franchises were abandoned and whose property was transferred to that company. Whether there were any minority dissenting stockholders is not shown by the record. If there were, no evidence is given of any steps having been taken by them to present the formation of the illegal

trust and combination represented by the Southern Light & Traction Company.   When we look to the contract of May 20, 1903, and the charter of the Southern Electric Securities Company, it is evident that one supplements the other and both were parts of one single scheme.   The contract had relation to the organization of this company, and the company was organized for the purpose of carrying the contract into execution.   The transfer to the securities company of the stock in the Vicksburg Railway & Light Company was an integral part of the common scheme, one of the purposes of which was to dominate, control, and operate the Southern Light & Traction Company, a corporation which, on the facts of this record, is operating in violation of the laws of this state.

The record of this cause does not present the case of a foreign corporation organized for the purpose of doing business in the state of its domicile, and granted by its charter the right to exercise various powers and privileges, some of which are and some of which are not permitted to be exercised in this state, even by its domestic corporations, which powers, of course, could not be exercised by any foreign corporation.   However numerous may be the corporate powers of this company, it is manifest that it was called into existence for the primary purpose of carrying out the contract of May 20, 1903.   Its total corporate stock was issued in payment to the stockholders in the Mississippi corporation for the stock in such corporations assigned to it.   It took under its charter the right to own and deal in the stock of other corporations; but, so far as this record discloses, its principal corporate purpose is to own a majority of the stock of other corporations.   It does not appear to deal as a trader in these stocks, buying and selling the same, or to deal in any stocks, unless it secures control of a majority of the stock in· that particular corporation.   It is said, however, by counsel, that this is a foreign corporation, having, by its charter, the right to acquire stocks in other corporations, and that the courts of this state have no jurisdiction to control this corporate power;

that, as an incident of ownership, the right to vote the stock exists; and so it is argued that, however inimical to the policy of this state the control of its domestic corporations may be by this foreign corporation, there is no power in the court to enjoin the exercise of that right. This contention, of course, concedes that the voting of the stock is against the policy of this state and would be controlled by the court if it had the power; for the contention is unnecessary, if the voting of the stock is not against public policy and is owned by a person or corporation having the right to vote the stock in this state. The courts of this state, of course, have no jurisdiction over foreign corporations confining their operations to the state in which they are created. But quite a different question is presented when a corporation is organized in another state for the primary purpose of doing business in this state, instead of that of its domicile, and where the very purpose of its organization is to dominate and control a domestic corporation, which is itself engaged in business as a combination and trust.

It is not denied in argument that the Southern Light & Traction Company is a trust and combination, now that it is being operated in violation of the statutes and public policy of this state. It cannot be denied, in the light of this record, that the Southern Electric Securities Company was organized for the express and agreed purpose of controlling, *inter alia,* this illegal domestic corporation. But it is said that the Southern Light & Traction Company and the Vicksburg Railway & Light Company are the only corporations doing business in this state; that the Southern Electric Securities Company is not doing business in this state, and for that reason the court has no jurisdiction over it. The reason of this connection is simple. The Southern Electric Securities Company is not doing business in this state as the Vicksburg Railway & Light Company, nor as the Southern Light & Traction Company. It is neither running a street railroad nor a light plant. Its corporate function and purpose is to control, as the majority stockholder, the sub-

ordinate companies engaged in other business. But the Southern Electric Securities Company is doing business in this state as the controller of the domestic corporations. That is why it was organized, and it is the exercise of that particular corporate function that is sought to be restrained by this proceeding. Three-fourths of the stock of the Mississippi corporations is owned by the Southern Electric Securities Company, less about $30,000 of the stock of the Southern Light & Traction Company which was given to the promoters of a rival company to stifle its competition. This stock can be voted only by the Southern Electric Securities Company, and it can be only voted in a corporate meeting held in this state. Certainly it cannot be said that the Southern Electric Securities Company is not exercising its corporate function in voting this stock, nor will it be contended that the stock can be voted anywhere except in the state of Mississippi. It is the exercise of this corporate function in this state that is restrained by the injunction issued in this case.

The case before the court is not that of a foreign corporation doing business in this state, and which has done some act in violation of its public policy, by reason of which it is sought to exclude such corporation from doing any other legitimate business in this state. The question before the court is whether a corporation, organized in another state under the terms of a contract and for the purpose of controlling a domestic corporation in violating our anti-trust statute, can be permitted to do any act in this state having relation to and in furtherance of the contract under which it was organized. Under such circumstances we are of opinion that it should be enjoined from such action.

*Affirmed and remanded.*