188 So.2d 543

Ralph Eugene MARCUS et al.

v.

J. R. WATKINS COMPANY.

5 Div. 820.

Supreme Court of Alabama.

June 23, 1966.

---

Omar L. Reynolds and Reynolds & Reynolds, Clanton, for appellants.

Jon Will Pitts, Clanton, for appellee.

SIMPSON, Justice.

This case was submitted on March 11, 1966.

The J. R. Watkins Company (hereinafter referred to as Watkins) brought this action in assumpsit against Ralph Eugene Marcus, principal, Martha Jane Bates and Lewis W. Headley, sureties, seeking to recover $1,876.60. The gravamen of the action is the written contract of unconditional guaranty to the J. R. Watkins Company of the payment of a debt contracted by Ralph Eugene Marcus, principal.

The cause was tried to a jury which returned a verdict for the plaintiff in the amount sued for. Defendants filed a motion for a new trial which was denied. This appeal followed.

Although several assignments of error are made, this appeal turns on one issue. It is agreed that Watkins is a Delaware corporation with its principal place of business in Winona, Minnesota. It is and has been engaged for many years in the manufacture and sale of food products, spices, extracts, vitamin preparations, proprietary medicines, cosmetics, farm products, insecticides, feeding supplements and veterinary medicines, salves for both man and beast, nostrums, shaving lotions, shampoos, skin cleansers, mineral compounds for hogs, proteins, mineral compounds for chickens, and other products. The essential facts are undisputed. The difference between the parties is this: Appellant contends that Watkins, admittedly a Delaware corporation, is a foreign corporation actually doing business in the state of Alabama, and as such has not qualified to do business in Alabama with the Secretary of State and hence the agreement sued on is unenforceable and wholly void under the Constitution and statutes of Alabama, the pertinent provisions of which will be set forth. Watkins on the other hand admits that it is not qualified to do business in Alabama, but contends that in fact it is not doing business in the state of Alabama and that the provisions of the Constitution and statutes referred to have no application to it, and that it may therefore sue in the courts of this state for the sums alleged to be due it on the contract herein involved.

Section 232, Constitution of Alabama, 1901, in part provides:

"No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association."

Title 10, § 191, Code 1940, provides:

"All contracts or agreements made or entered into in this state by foreign corporations which have not qualified to do business in this state shall be held to be void at the suit of such foreign corporation or any one claiming through or under such foreign corporation by virtue of said void contract or agreement * * *."

Title 10, § 192, provides:

"Every corporation not organized under the laws of this state shall, before engaging in or transacting any business in this state, file with the secretary of state a certified copy of its articles of incorporation * * *."

■ While we have stated what we believe to be Watkins' contentions above, it might be noted that we have simply surmised such to be the case. We have been favored with a brief consisting of two pages of argument, neither of which contains any citation of authority for the argument advanced, which consists simply in the assertion that Watkins put on testimony by one of its officers to the effect that the company had no agents in the state of Alabama, and that such testimony has been contradicted only by circumstantial evidence. The question before us is whether or not based on the evidence adduced it appears as a matter of law that Watkins was doing business in Alabama so as to bring into application the statutes set out above. We will review the evidence on this point:

A. Mr. Barth, who was a witness for Watkins, and who was indentified as an attorney and assistant secretary of Watkins, gave testimony which comprises more than 100 pages of the transcript. Inter alia, he testified that the principal business of the plaintiff (Watkins) was to sell at wholesale to individuals who operate their own business and which goods they purchase from the company and resell to their individual customers; that the chief business of the plaintiff was the sale of products such as food products, beverage bases, spices, extracts, vitamin preparations, proprietary medicines, cosmetics, etc. and that Watkins ships products over the United States; that an agreement was entered into with Ralph Eugene Marcus of Clanton, Alabama, with Martha Jane Bates and Lewis W. Headley as sureties. (Here we might note that there is no denial that the parties entered into the contract and no denial that Martha Jane Bates and Lewis W. Headley signed as sureties or that goods were delivered to Marcus and that the balance due under that agreement was $1,876.60.)

This witness further testified that Watkins is incorporated in the state of Delaware with its principal place of business at Winona, Minnesota, that there had been no qualification whatever to do business in Alabama and that no business was transacted in Alabama; that between 1956 and 1959 the company had between 60 and 70 agents or dealers or purchasers in Alabama and that there were two dealers purchasing in Chilton County. The witness stated that two agents or field representatives or farm line men of Watkins lived in Alabama during this period of time, 1956 to 1959; one was C. E. Faust and the other was L. S. Knight; Faust lived at Selma and he was a field man for Watkins, was on the payroll of the plaintiff to perform certain duties; Mr. Knight's duties would be in the same capacity; that is, field agent; that their duties in Alabama were to secure any dealers and interest them in Watkins business and sometimes they would

check records in the office of the Judge of Probate and they kept stationery and other papers and instruments such as the contract form signed by Marcus.

Several witnesses for the appellants (defendants) who were identified as "sellers of Watkins products" testified. Their testimony is in essential respects consistent and that of A. O. Boswell will serve to illustrate the nature of this line of evidence: Mr. Boswell testified that he sold products for J. R. Watkins from March, 1956 to October, 1959; that the territory assigned to him by Watkins was in north Chilton County; that he sold the types of goods enumerated above. During the time that he sold for Watkins he had contact with representatives or agents of the Watkins Company and that he was acquainted with quite a few field men and the higher officials. One Mr. Laird from Memphis, Tennessee, "sponsored" the witness, started him off in business and came to see him and would spend the night. This witness attended meetings where officials of the Watkins Company were present. These meetings were held about four times a year at the Holiday Inn in Bessemer, at the Dixie Cafe in Clanton, and in Selma at the Selma Del Restaurant. At first the meetings were held about four times a year and then about every two months. That the Watkins Company notified the dealers where the meetings were going to be held and the officials of the company would be present. At the meetings they demonstrated new products and prices and one of the main businesses was recruiting new dealers and they offered prizes for new dealers and they sometimes would have a few items for sale and some of the dealers would buy them; at other times they would take orders at the meetings. They made speeches on salesmanship, how to sell; the man there holding the meeting had a chart on a board and he would put down different products and show the different margins there were to be made on these products; there were pep talks; they would urge dealers to sell on credit.

Another witness who was also a "dealer" at one time testified that a field man for Watkins went around with him on his route and took over and did most of the selling. This witness testified that he attended several meetings where the head man from each department of the Watkins Company would be present to demonstrate their line. The company paid for the meals at these meetings and the officials would take orders.

Several testified that the top men of the company would come to help them sell, go around with them and give them selling advice.

Mr. Lucian Balance testified for Watkins. He was identified as a "distributor" of Watkins products. He owns a store in Birmingham. He and his father before him have been selling Watkins products at wholesale for 32 years. This witness testified that he had a contract with J. R. Watkins Company and that they agree to furnish a list to him to choose from. He exclusively handles Watkins products and he gets his goods from Memphis. The officials of the company and employees of the company come to his place of business on occasion. He sells to dealers and gives demonstrations and tells them how to sell Watkins products. There are some 50 to 55 dealers around Birmingham. Some dealers sell products other than Watkins products but the company does not like that. He holds sales meetings in his store one time a week; the officials of the company write letters to him and tell him what to suggest to the dealers. The witness gives the dealers the suggestions made by the home office. The company fixes the prices at which this witness sells the goods. There are stores like his in Mobile, Montgomery, Gadsden, Huntsville, and there might be more.

Several other witnesses testified to the same general effect and, in fact, the evidence concerning the business of Watkins and how it is conducted is uncontradicted. The sole question is whether this activity

amounts to "doing business" within Alabama as that term is used in our statutes and the constitution.

■ Whether a foreign corporation is or is not "doing business" within the state is a mixed question of law and fact. As here noted, the facts in this case are clear. This court has held many times in the past that merely soliciting business in this state, the orders to be approved in the office of the foreign corporation and the goods shipped thereon into this state, does not constitute doing business in this state so as to bring the non-qualified foreign corporation under the operation of our statutes and constitution. In fact, the status of J. R. Watkins Company in this regard has been before this court and the Court of Appeals on at least two occasions. J. R. Watkins Co. v. Goggans et al., 242 Ala. 222, 5 So.2d 472; J. R. Watkins Co. v. Hamilton et al., 32 Ala.App. 361, 26 So.2d 207. In each case, where it was shown only that Watkins solicited orders in Alabama and nothing else, it was held that this alone did not constitute doing business.

However, it would appear that Watkins takes too much comfort from these early cases and has paid too little attention to later cases on this subject. One of the leading later cases decided by this court is Boyd v. Warren Paint & Color Company, 254 Ala. 687, 49 So.2d 559, where it was noted that due to several then recent cases from the Supreme Court of the United States, a new approach or new test was to be used to determine what constituted doing business:

"But the traditional theory, thought to be crystalized in federal jurisprudence, that personal jurisdiction over a foreign corporation cannot be acquired when the only basis is 'mere solicitation' of business within the borders of the forum's sovereignty [citations omitted], seems to be no longer controlling. Recent federal decisions have considerably impinged upon that concept. * * *

"The rule that we deduce from these late decisions, of which International Shoe Co. v. State of Washington is the 'bellwether,' is that the regular and systematic solicitation of orders in the state by appellant's salesmen, resulting in a continuous flow of appellant's products into the state, is sufficient to constitute doing business in the state so as to make the corporate defendant amenable to suits in its courts, * * *."

■■ In Thompson-Hayward Chemical Co. et al. v. Childress et al., 277 Ala. 285, 169 So.2d 305, it was held that a company which had salesmen solicit orders and travel one week of each month in the state and which made sales in the state as a result of orders obtained by salesmen was "doing business". We recognize, of course, that the foreign corporation in the above cases was the defendant and the question was whether or not there was sufficient corporate activity within the state to subject it to the jurisdiction of the state courts, However, no substantial difference applies whether the foreign corporation be plaintiff or defendant, and in fact it would seem to us that the term "doing business" means the same whether it be found in the statutes above or in the statutes concerned with obtaining jurisdiction over the foreign corporation when sued in the state courts. Rather, it would seem that less activity would be required to bring into application the constitutional and statutory provisions cited at the outset of this opinion when a foreign corporation invokes the protection of the state courts.

With the foregoing authorities in mind and noting again the evidence adduced below, what is the activity which Watkins engages in within this state? Clearly it is uncontradicted that the company holds several sales meetings a year in Alabama, renting hotel rooms and meeting halls. New products are demonstrated and orders are taken. There are many Watkins "dealers" selling its products throughout the state in territories assigned to each by Watkins. Each dealer must submit to the company 60% of every dollar collected and must make periodic reports of sales made. In

addition the company has at least two full-time salaried employees in Alabama who supervise the dealers and make rounds with them from door to door, giving sales advice and making demonstrations. These resident employees also solicit new "dealers".

The case before us is identical in every material respect with J. R. Watkins Co. v. Stanford, La.App., 52 So.2d 325, wherein the Louisiana Supreme Court was faced with exactly the same issue involved here, involving the same company, engaging in the exact same activity in Louisiana. We find ourselves in agreement with the result reached there. We think the evidence clearly establishes that the plaintiff here is a foreign corporation which is in fact doing a substantial amount of business within the state of Alabama and has been so engaged for a number of years. This foreign corporation seeks the aid of our courts and has not qualified with the Secretary of State as required by our Legislature. We think clearly under our statutes and constitution that it is not entitled to sue on the contract here involved and that the same is unenforceable under the circumstances. This holding is not inconsistent with the earlier cases involving this company because it was shown in those cases only that the company solicited orders in this state which were approved outside the state and the goods shipped into the state pursuant to these orders. At that time such singular activity was not deemed to constitute the doing of business.

In addition, the record before us indicates that Watkins does a great deal more activity in this state than the mere solicitation of orders, and in fact engages in substantial activity within the state over and above "mere solicitation".

It follows that the judgment appealed from must be and the same is reversed and rendered.

Reversed and rendered.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.