**MID–CONTINENT TELEPHONE COR-
PORATION, Plaintiff,**

v.

**HOME TELEPHONE COMPANY, Lon J.
Darley and Rex B. Darley, and Union
Telephone Company of Mississippi Inc.,
Defendants.**

No. DC 6924.

United States District Court
N. D. Mississippi,
Delta Division.

Dec. 31, 1969.

MEMORANDUM OPINION ON THE AFFIRMATIVE DEFENSE THAT PLAINTIFF CANNOT MAINTAIN ITS ACTION BECAUSE OF ILLEGALLY TRANSACTING BUSINESS WITHIN THE STATE OF MISSISSIPPI

KEADY, Chief Judge.

This diversity action for damages and injunctive relief arising from alleged breach of contract is brought against Home Telephone Company (Home), Lon J. Darley, Rex B. Darley and Union Telephone Company of Mississippi, Inc., all being Mississippi citizens, by Mid-Continent Telephone Corporation (Mid-Continent), which is an Ohio citizen. Defendants have pleaded, as an affirmative defense, that Mid-Continent is doing business within the State of Mississippi without having acquired a certificate of authority from the Secretary of State, in violation of Mississippi laws,[1] and is barred from maintaining this action in federal district court.

A separate evidentiary hearing restricted to a disposition of this issue has been held to enable the court to rule upon this matter in advance of a consideration of the merits of the case.

## THE EVIDENCE

As the facts are largely uncontradicted, the court is confronted with the familiar problem of whether the evidence discloses that plaintiff is "doing business" within the state in violation of the statute. Admittedly no certificate of authority has been obtained from the Mississippi Secretary of State.

Mid-Continent is an Ohio corporation, with its principal place of business located at Hudson, Ohio, and its general offices in the Cleveland vicinity. Incorporated in 1960, Mid-Continent exists

Lawrence J. Franck and George Butler, Jackson, Miss., Edward F. Whipps, Columbus, Ohio, for plaintiff.

Robert Weaver, Jackson, Miss., Ross L. Franks, Hernando, Miss., Dudley E. Bridgforth, Jr., Olive Branch, Miss., Charles H. Ryan, Monroe, La., for defendants.

1. Miss.Code Ann. § 5309–239 provides, in relevant part, as follows:

 "No foreign corporation transacting business in this state without a certificate of authority [issued by Secretary of State] shall be permitted to maintain any action, suit or proceeding in any court of this state."

principally as a telephone holding company, and has acquired either all or the great majority of the common stock in more than 35 operating telephone companies and in three community antenna television companies. The subsidiary companies are separately incorporated and as such they operate in 11 states, including Mississippi, where Mid-Continent owns all the common stock in an operating company known as Florence Telephone Company (Florence), which covers the service areas of Florence and Prentiss, Mississippi.

Its system presently being the nation's fifth largest telephone system, Mid-Continent employs approximately 162 persons, who are largely specialist personnel, at its home and general offices in Ohio and 23 employees at a data processing center located in Pennsylvania. This is the only state other than Ohio where Mid-Continent has become qualified to do business.

Mid-Continent does not, itself, engage in any telephone, communication or other public utility business; it does not own any telephone lines, equipment or plant of any kind, nor does it hold any certificate from any federal or state regulatory authority empowering it to engage in telephone, communication or other type of public utility business. Mid-Continent's principal corporate purposes are copied below.[2]

Mid-Continent has no office, agency, telephone listing, warehouse or bank account within Mississippi, nor does it own any real estate, plant or other property therein. It has no officers, employees or agents who are stationed within the state, and except as hereinafter brought out none enter its borders.

In line with its interest in acquiring independent telephone companies, Mid-Continent's chief executive officers have at times visited Mississippi with the aim of attempting to acquire new operating subsidiaries. Negotiations for acquiring independent companies, which are conducted over a multi-state area, occupy substantial portions of the time and energy of Mid-Continent's president and vice-president, and they have on various occasions during the years 1967 and 1968 made business trips to Mississippi. When an acquisition is made, it is for the purchase of corporate stock of the local telephone company, either for cash or for exchange of Mid-Continent's stock. As a result of such trips, in August 1968, Mid-Continent acquired 100% of Florence's common stock which had been previously owned by local shareholders. Mid-Continent's officers visited several other telephone companies in the state, had discussion with their stock owners, but no contracts were executed. Similar negotiations were conducted in Mississippi during a portion of this time by Mid-Continent's officers with the Darleys, who owned the common stock in Home, an independent telephone company with its principal place of business at Olive Branch, Mississippi. Although the document forming the subject of the instant litigation was finally executed on November 15, 1968, by the Darleys and Mid-Continent at Hudson, Ohio, a considerable part of the negotiations was held in Mississippi by Mid-Continent officers who were authorized to

---

2. Mid-Continent's Articles of Incorporation provide, among other things, the following:

"(a) To acquire by purchase, exchange or otherwise, and to own, hold, use, sell, exchange, assign, transfer, mortgage, pledge or otherwise dispose of shares of stock, bonds, debentures, notes, contracts and obligations of corporations, associations and other entities of any kind.

"(b) To aid and provide services for any corporation, association or other entity, the stock or securities of which are owned directly or indirectly in whole or in part by the corporation or any other corporation, association or entity regardless of the corporation's interest therein and to aid and provide services for and participate in the reorganization, consolidation, merger or acquisition of any corporation, association or other entity in which the corporation shall have an interest."

make binding commitments for their employer. At all times Mid-Continent has maintained an active interest in acquiring available Mississippi-based telephone companies where profitable to its system.

Florence, which at present is Mid-Continent's only Mississippi subsidiary, is incorporated under Mississippi law and operates entirely within this state. As a typical subsidiary corporation, Florence holds certificates of Public Convenience and Necessity issued by the Mississippi Public Service Commission for rendering telephone service, and it has its own Board of Directors, officers, records and books of account, bank account, customers and employees. Florence owns title to its telephone lines, equipment and other operating properties. The persons who are officers and directors of Florence are in no case the same as Mid-Continent's officers and directors. The directors are local citizens elected upon the vote of Mid-Continent, Florence's sole and only stockholder.

In accordance with its custom in dealing with its operating subsidiary corporations, Mid-Continent, after acquiring the corporate stock of Florence, executed a service agreement, by which Mid-Continent agreed to furnish to Florence services in the various areas of executive advice, engineering service, customer and employee relations, as well as legal, accounting, financial, tax and insurance assistance. These services are provided, upon Florence's request, through communications by telephone, letter or personal visit with Mid-Continent's supervisory personnel in Ohio as well as by visits of Mid-Continent's personnel to Florence. For this, Florence is required to pay Mid-Continent 3% of its gross operating revenue upon the parent's interim billing, subject to later periodic adjustment. These services are billed to Florence at cost. For the short year, August–December 1968, Florence paid Mid-Continent $2,616.96 for these items; for the 9-month period, January 1 to September 30, 1969, Mid-Continent has billed Florence $8,836.78, which represents .0073% of Mid-Continent's income derived from serving its operating subsidiaries. Upon occasion, Mid-Continent also makes loans of money to Florence, charging the subsidiary with the same interest rate paid by it. Interest for the 9-month period ending September 30, 1969, paid by Florence amounted to $3,704.17, or .0016% of total interest income paid to Mid-Continent by all operating subsidiaries. Mid-Continent has assisted Florence in obtaining REA financing in Mississippi, having provided requisite engineering services and agreeing to increase Florence's equity capital by $370,000 to obtain additional REA financing. Furthermore, Mid-Continent maintains an equipment and supply department through which Florence, or any other subsidiary, may, but it is not required to, purchase construction and maintenance materials and equipment at favorable prices. These various services rendered by Mid-Continent are performed solely for its operating subsidiaries, and within the State of Mississippi, only Florence. It does not do business with, or provide services to, any outside person, firm or corporation, nor does it trade in any manner with the general public, or any segment thereof, within the state.

## THE LAW

■ It is now well settled that in diversity cases federal courts will apply the law of the forum state to determine whether a foreign corporation has been "doing business" without meeting the qualification requirements of the state and is thereby disqualified from bringing an action in the local courts, state or federal. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); Humboldt Foods, Inc. v. Massey, 297 F.Supp. 236 (N.D.Miss.1968). Thus, our task here is to ascertain and apply the rule in Mississippi.

In looking to state law, it should be noted at the outset that courts in some jurisdictions have held that the meaning of the phrase "doing business" is indivisible and does not vary according to the context in which it is used, i.e., the same

levels of activity are considered "doing business" by a foreign corporation whether for purposes of: (1) taxing it, (2) serving process on it, or (3) barring it from state courts for failure to meet the state's qualification requirements. Marcus v. J. R. Watkins Co., 279 Ala. 584, 188 So.2d 543 (1966); 36 Am.Jur.2d 318, Foreign Corporations, § 324. Courts of other states have held that the meaning of the phrase "doing business" changes according to the context in which it is used. In some states, for example, a greater level of activity is required to obtain service of process on a foreign corporation than to bar it from the courts of the state for "doing business" without qualifying. The reason generally given for the distinction is that in service of process cases, courts look to due process rights of the foreign corporation as a defendant, while in qualification cases the courts are generally concerned with ascertaining the legislative intent in enacting qualification statutes and with the effect of such statutes on interstate commerce. 23 Am. Jur. 340, Foreign Corporations, § 362; see annotation at 18 A.L.R.2d 188.

◼ In Mississippi, the three categories have been plainly recognized by the State Supreme Court, Davis-Wood Lumber Co. v. Ladner, 210 Miss. 863, 50 So. 2d 615 (1951), and the court has announced that a greater degree of business activity is required to bar a foreign corporation from Mississippi courts under Miss. Code Ann. §§ 4164 and 4140, the

predecessors of the present qualification statute, than is required to subject the same foreign corporation to local service of process under the state's Long Arm Statute, Miss.Code Ann. § 1437. *Davis-Wood*, supra; Mississippi Wood Preserving Co. v. Rothschild, 201 F.2d 233 (5 Cir. 1953); Century Brick Corp. of America v. Carroll, 247 Miss. 514, 153 So.2d 683 (1963). The more strict standard has been applied in qualification cases because of the penalizing nature of a statute that denies access to the foreign corporation for enforcing what may be unquestioned rights in the local courts, which may often be the only available forum. Although this approach may conceivably result in certain cases where, upon identical facts, a local resident might not be able to sue a foreign corporation in Mississippi courts and yet the foreign corporation could maintain its local action, it accords with what is recognized as the better view. 17 Fletcher, Corporations, § 8465, pp. 552–3. It necessarily follows that, for Mississippi, decisions holding a foreign corporation is not doing business for purposes of jurisdiction and process are good authority for the proposition that the foreign corporation has not violated the state's qualification statute.

In 1962 the corporation statutes of Mississippi were rewritten, and this repealed some laws and added others to the statutory scheme. Pertinent to the present consideration is § 5309–221, Miss. Code Ann., printed below,[3] as well as §

3. § 5309–221 (Admission of foreign corporations), provides, in relevant part, as follows:

"No foreign business corporation for profit shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the Secretary of State. No foreign corporation shall be entitled to procure a certificate of authority under this Act to transact in this state any business which a corporation organized under this Act is not permitted to transact. * * *

"Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be trans-

acting business in this state, for the purposes of this Act, by reason of carrying on in this state any one or more of the following activities:

"(a) Maintaining or defending any action or suit or any administrative or arbitration proceeding, or effecting the settlement thereof or the settlement of claims or disputes.

"(b) Maintaining bank accounts.

"(c) Maintaining offices or agencies for the transfer, exchange and registration of its securities, or appointing and maintaining trustees or depositaries with relation to its securities.

"(d) Soliciting or procuring orders, whether by mail or through employees or

5309–239 of said Code (Fn. 1). These statutes have replaced earlier statutes of similar, but not identical, character. In the cases decided since the passage of the new statute, the Mississippi Supreme Court has generally held that decisions construing the earlier statues are still good law. Parker v. Lin-Co Producing Co., 197 So.2d 228 (Miss. 1967); Ross Construction Co. v. U. M. & M. Credit Corp., 214 So.2d 822 (Miss. 1968); Wood v. Gulf States Capital Corp., 217 So.2d 257 (Miss. 1969). Cf. Humboldt Foods, Inc. v. Massey, supra.

■ Succinctly stated, the rule established by the decisions interpreting the qualification statutes in Mississippi is that a foreign corporation is "doing business" within the state when it performs acts (not excluded by the statute itself) that are "within the functions of its corporate powers" and "the business so performed is substantial in scope." Newell Contracting Co. v. State Highway Commission, 195 Miss. 395, 15 So.2d 700 (1943), and Peterman Construction & Supply Co. v. Blumenfeld, 156 Miss. 55, 125 So. 548 (1930) (both qualification cases); Davis-Wood Lumber Co. v. Ladner, supra (a process case). The "substantiality" and "scope" of local activity are equated with "some substantial part of its ordinary or customary business, usually continuous in the sense that it may be distinguished from merely casual, sporadic, or occasional transactions and isolated acts." Snipes v. Commercial & Industrial Bank, 225 Miss. 345, 82 So.2d 895, 83 So.2d 179 (1955) (a qualification case). This statement of law accords with the generally prevailing view throughout the country. 17 Fletcher, Corporations, § 8466, p. 556. While the foregoing rule is easy to state, its appli-

cation, necessarily made to each case upon an *ad hoc* basis, is not without its difficulty, particularly in factual and legal situations, as here, which are distinctly different from those of any previous Mississippi decision.

Defendants urge three contentions: (1) Mid-Continent is doing business in Mississippi by acquiring Florence, and attempting to acquire Home and other independent telephone companies in the state as such acts are within its corporate purposes; (2) Mid-Continent, as the alter ego of Florence, is doing business within the state through Florence as its agent; and (3) Mid-Continent is doing business locally because of the service agreement it performs with Florence and the dealings had with its subsidiary within the state.

■ By the great weight of authority in other jurisdictions, the purchase or ownership of stock, even of a controlling interest, in a domestic corporation by a foreign corporation does not constitute doing business by the foreign parent sufficient to subject it to service of process in the state of the subsidiary's operation. Peterson v. Chicago R. I. and P. R. Co., 205 U.S. 364, 391, 27 S.Ct. 513, 51 L.Ed. 841 (1907); Peoples Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918); Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1924); Berkman v. Ann Lewis Shops, Inc., 246 F.2d 44 (2 Cir. 1957); Uible v. Landstreet, 392 F.2d 467 (5 Cir. 1968); 17 Fletcher, Corporations, § 8490, p. 639; 36 Am.Jur.2d, Foreign Corporations, § 347, p. 350 et seq. This rule, often referred to as the "Cannon" rule because of its prominent enunciation by Mr. Justice Brandeis, in Cannon Mfg.

agents or otherwise, where such orders require acceptance without this state before becoming binding contracts.

"(e) Transacting any business in interstate commerce.

"(f) Conducting an isolated transaction completed within a period of thirty (30) days and not in the course of a number of repeated transactions of like nature.

"(g) Investing in or acquiring, in transactions outside of Mississippi, royalties and other non-operating mineral inests, and the execution of division orders, contracts of sale and other instruments incidental to the ownership of such non-operating mineral interests."

Co. v. Cudahy Packing Co., and widely followed throughout the country, has never been directly reviewed by the Mississippi Supreme Court. However, it was recognized and applied by this district court in a recent Mississippi qualification case, Bunge Corp. v. St. Louis Terminal Field Warehouse Co., 295 F.Supp. 1231 (N.D.Miss.1969), and must be followed here.

■ Defendants urge that an exception to the above principle should arise when the foreign corporation is a holding company whose chief purpose is to acquire and own stock in subsidiaries. However, the only case authority for this position, which is sometimes generally stated,[4] are two holdings, one from Missouri, State ex rel. City of St. Louis v. Public Service Commission, 331 Mo. 1098, 56 S.W.2d 398 (1932), and the other from Washington, Bankers' Holding Corp. v. Maybury, 161 Wash. 681, 297 P. 740 (1931), 75 A.L.R. 1237. Both cases rest upon distinguishable facts or statutes and are inapposite here. In the *Public Service Commission* case, the foreign holding company, not licensed to do business in Missouri, nevertheless maintained an office in St. Louis and purchased more than 10% of the capital stock of a Missouri public utility company without obtaining permission of the state regulatory body in violation of a Missouri statute. Similarly, in *Maybury*, the decision was based in part upon a statute providing that a foreign corporation could not hold stock in a Washington corporation without being licensed to do business. It is worthy of note that the *Maybury* decision has been seriously eroded, if not overruled, by a subsequent Washington decision, State v. Northwest Magne-

site Co., 28 Wash.2d 1, 182 P.2d 643 (1947), which referred to the fact that the statute upon which *Maybury* was based had been repealed. See Annotation 18 A.L.R.2d, Note 16 at page 193, and page 197.[5] On the contrary, substantial authority exists for the proposition that a foreign parent corporation, organized as a holding company for the sole purpose of owning stock in subsidiary operating companies, is not doing business in the state of the subsidiary's operation. Cordts v. Beneficial Loan Soc., 34 F.Supp. 197 (D.C.N.J.1940); Beneficial Ind. Loan Corp. v. Kline, 45 F.Supp. 168 (N.D. Iowa 1942), reversed on other grounds 132 F.2d 520 (8 Cir. 1943); Proctor v. Sagamore Big Game Club, 128 F.Supp. 885 (D.C.Pa.1955). Here, Mid-Continent has not violated any statute or contravened the state's public policy by purchasing the controlling interest in a domestic telephone corporation, nor has Florence engaged in business in any illegal manner whatsoever.[6] We conclude that Mississippi would align itself with the prevailing view that Mid-Continent's negotiation and purchase of common stock in one or more subsidiary companies within Mississippi does not render it doing business within the purview of the qualification statutes, and the fact that acquisition of stock in other companies was an avowed purpose of Mid-Continent's corporate charter has no effect upon the operation of the generally accepted rule.

■ The *Cannon* rule recognizes the necessity for the foreign parent corporation to maintain an identity separate from that of its domestic subsidiary and upon a failure to do so the corporate entity of the subsidiary will be disre-

---

4. See 20 C.J.S. Corporations § 1841, p. 61; 17 Fletcher § 8490, p. 641.

5. Also distinguishable is the Mississippi case of Southern Electric Securities Co. v. State, 91 Miss. 195, 44 So. 785 (1907), where the foreign parent was held to be doing business because its wholly owned subsidiary was, admittedly, being operated in violation of the state's anti-trust laws.

6. In the case sub judice, Mid-Continent has at no time transgressed Miss.Code Ann. § 7716–41 which prohibits the sale, lease, or assignment of a certificate of Public Convenience and Necessity without the express approval of Mississippi Public Service Commission, as the acquisition of Florence involved only transfer of corporate stock and not operating certificates.

garded, or at least the relation between parent and subsidiary will be deemed principal and agent so as to make business done by the agent the business of its principal. This would be the result if corporate rules, procedures and forms were ignored by the parent. 36 Am.Jur. 2d, Foreign Corporations, § 347, pp. 351–352. Such is clearly not the case here, as Florence has its own officers, board of directors, customers, employees, and it has its own bank accounts, property and is responsible for its own contracts. There is no evidence that Florence is a "dummy" or an instrumentality of Mid-Continent; at most it is a controlled subsidiary, and must be treated as a separate corporate entity. McLean v. Goodyear Tire & Rubber Co., Inc., 85 F.2d 150 (5 Cir. 1936); Aro Manufacturing Co., Inc. v. Automobile Body Research Corp., 352 F.2d 400 (1 Cir. 1965); Bunge Corp. v. St. Louis Terminal Field Warehouse Co., supra. Thus, we must reject the contention that Mid-Continent is doing business within the state through Florence as its agent because of Florence's local business operations. Cf. Murdock Acceptance Corp. v. Adcox, 245 Miss. 151, 138 So.2d 890 (1962), and Markow v. Alcock, 356 F.2d 194 (5 Cir. Fla. 1966).

 The last, and most troublesome, question raised by defendants is that Mid-Continent has entered the state, for the purpose of doing business, by entering into a service agreement with Florence whereby it furnishes to the subsidiary, upon its request, services in various areas requiring technical training and expertise, such as engineering, marketing, accounting, personnel, etc., and also sells to Florence equipment and supplies and lends it money and other financial assistance, which are local activities at least partly performed in Mississippi. It is significant that Mid-Continent has dealings of this type only with Florence, its subsidiary, and enters into no transactions of any kind with third parties or the public generally. Mid-Continent urges that since these dealings are wholly interorganizational between parent and subsidiary, they do not fall within the scope of "doing business" within the generally accepted meaning of the term. The court is directly faced with what may be a logical inconsistency between treating Mid-Continent as inseparable from Florence for the purpose of weighing these parent-subsidiary dealings after having previously found Florence to be a separate entity from Mid-Continent insofar as Florence's business transactions in Mississippi may not be imputed to its parent. Even so, the prevailing view, largely a practical extension of the Cannon rule, is that parent-subsidiary dealings or transactions are considered within the corporate family, or intra-corporate, and do not, of themselves, constitute transacting business by the parent in the state of the subsidiary. Cannon Mfg. Co. v. Cudahy Packing Co., supra; Peterson v. U-Haul Co., 409 F.2d 1174 (8 Cir. 1969); Blount v. Peerless Chemicals, 316 F.2d 695 (2 Cir. 1963); Hurley v. Wells-Newton Nat. Corp., 49 F.2d 914 (D.C.Conn.1931); Nagl v. Northam Warren Corp., 8 F.R.D. 130 (D.C.Neb. 1948); Terry Carpenter, Limited v. Ideal Cement Co., 117 F.Supp. 441 (D.C.Neb. 1954); Anderson v. British Overseas Airways Corp., 144 F.Supp. 543 (S.D.N. Y. 1956); Zeidler v. Johnson, 346 Mich. 204, 77 N.W.2d 756. Cf. Intermountain Ford Tractor Sales Co. v. Massey-Ferguson Limited, 210 F.Supp. 930 (D.C.Utah 1962). The reasoning of these cases is that it is within the competency of the parent to have some degree of interorganizational activity with its subsidiary as an incident of stock ownership, without being regarded as "doing business" in the subsidiary's state, so long as the foreign parent has no business dealings whatsoever with third persons, or outsiders. The term "doing business" is not regarded as covering transactions which do not involve persons outside the corporation. A further point sometimes made is that since it is the subsidiary which engages in business in a particular jurisdiction and it is amenable to the laws of the state, this adequately satisfies the interest held by the state with respect to

the activity under review, without requiring the parent also to be subject to the same jurisdiction. That situation exactly fits Mid-Continent's role, for the business engaged in by Florence, while it was locally owned and before the advent of Mid-Continent, remains the same business, measured both by quantity and quality, and is subject to the operation of state law, without increase or decrease resulting from change in ownership of Florence's stock. It, therefore, follows that the services rendered by Mid-Continent, to its subsidiary alone, are entitled to the protection of the legal principles applicable to the evidence of this case, and defendants may not prevail on this issue.

Defendants rely heavily on a recent Fifth Circuit case, Continental Telephone Corp. v. Weaver, 410 F.2d 1196 (5 Cir. 1969), applying Alabama law. True enough, the facts in that case are strikingly similar to those in the case sub judice, and the federal district court was upheld in its conclusion that Continental, a foreign holding company, was barred from maintaining its action upon an Alabama contract because it had been doing business in that state without becoming licensed under the Alabama qualification statute. Yet, this case may not be deemed here controlling or persuasive because the Alabama rule of "doing business" is significantly different from that of Mississippi. The leading Alabama case on the subject, upon which the district court in *Continental* relied,[7] adhered to the "indivisible rule" in the doing business concept as distinguished from the general rule which is followed by Mississippi. Ante, this opinion, pp. 7–8. Nor is this the only difference between the laws of the two states, for, more fundamentally, it appears the Alabama Supreme Court has applied, in line with the "minimal contacts" doctrine of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), a considerably broader standard of "doing business" even in service of process cases than has yet been adopted by the Mississippi Supreme Court.[8] These basic distinctions between the jurisprudence of the two states may not be overlooked, for in many cases they will produce different results. Concededly, the federal district court's decision in *Continental* is attractive and well reasoned in the light of Alabama case law, but in our view it sharply conflicts with the Mississippi criterion for "doing busi-

7. Marcus v. J. R. Watkins Co., (1966), 279 Ala. 584, 188 So.2d 543, at p. 547:
 " * * * [N]o substantial difference applies whether the foreign corporation be plaintff or defendant, and in fact it would seem to us that the term 'doing business' means the same whether it be found in the statutes above [referring to the Alabama qualification statutes] or in the statutes concerned with obtaining jurisdiction over the foreign corporation when sued in the state courts. Rather, it would seem that less activity would be required to bring into application the * * * [Alabama qualification statutes] when a foreign corporation invokes the protection of the state courts."

8. Contrast the Alabama decisions on service of process, Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559 (1950) ; New York Times Co. v. Sullivan, 273 Ala. 656, 144 So.2d 25 (1962), reversed on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R. 2d 1412; Thompson-Hayward Chemical Co. v. Childress, 277 Ala. 285, 169 So. 2d 305 (1964) ; Marcus v. J. R. Watkins Co., supra; In Re Martin, 281 Ala. 135, 199 So.2d 836 (1967) ; with comparable Mississippi cases of Lee v. Memphis Publishing Co., 195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428 (1943) ; Livestock Services, Inc. v. American Cyanamid Co., 244 Miss. 531, 142 So.2d 210 (1962) ; Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964) ; Breckinridge v. Time, Inc., 253 Miss. 835, 179 So.2d 781 (1965). The Mississippi cases were reviewed in Walker v. Savell, 335 F.2d 536 (5 Cir. 1964), and were contrasted with Alabama interpretations in Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861 (5 Cir. 1965). See also prior decisions of this court, Smith v. Barker, 306 F.Supp. 1173 (N.D.Miss. Sept. 19, 1969), and Neal v. Trim-Master Corp., 48 F.R.D. 390 (N.D.Miss. April 9, 1969).

ness" which has, until this date, remained essentially conservative, without substantial change for at least the last twenty-five years. (See Fn. 8).

Since we have concluded that Mid-Continent was not doing business in Mississippi, we find it unnecessary to examine plaintiff's alternate contention that because the letter agreement sued upon was executed in Ohio, an action to enforce rights arising out of that document would be unrelated to business transacted within the state and thus beyond the purview of the statutory disqualification for bringing suit.

An order overruling the affirmative defense pleaded by defendants shall be entered.