169 So.2d 305

**THOMPSON–HAYWARD CHEMICAL CO., et al.**

v.

**Paul CHILDRESS, Jr., et al.**

I Div. 104.

Supreme Court of Alabama.

Nov. 19, 1964.

Paul W. Brock, W. C. Boone, Jr., and Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for Thompson-Hayward Chemical Co.

Wilters & Brantley, Bay Minette, for Bertolla & Sons.

Chason & Stone, Bay Minette, for appellees.

COLEMAN, Justice.

Defendants appeal from judgment for plaintiffs in action for breach of duty to warn plaintiffs of the dangerous character of a substance allegedly manufactured by one defendant and sold to plaintiffs by the other defendant. We discuss this allegation below in detail.

Stated generally, plaintiffs allege that one defendant manufactured and placed on the market a dangerous substance, i. e., a vine killer; that the other defendant sold the substance to plaintiffs; that defendants knew of the dangerous quality of the substance but failed to warn plaintiffs; that plaintiffs used the substance by spraying it on their potato crop to kill the vines; that some of the substance drifted out of the potato field onto grass in plaintiffs' adjacent pasture; and that plaintiffs' cattle ate the grass, were thereby poisoned, and died.

Plaintiffs operate a farm in Baldwin County, Alabama. The manufacturing defendant is Thompson-Hayward Chemical Company, a foreign corporation not qualified to do business in Alabama. The vendor defendants, who sold the vine killer to plaintiffs, are a partnership, A. Bertolla & Sons, and the individual partners. They will sometimes be referred to collectively as Bertolla. Thompson-Hayward and Bertolla have taken separate appeals.

Service was made on Thompson-Hayward as provided by Act No. 282, Acts of Alabama, Regular Session, page 347, approved August 5, 1953. See Code of 1940, Recompiled 1958, Title 7, § 199(1).

Appearing specially, Thompson-Hayward asserted, by motion to quash service and plea in abatement, that it was not doing business in Alabama and, therefore, was not subject to the jurisdiction of the Circuit Court of Baldwin County. After hearing, the court denied the motion to quash and overruled the plea in abatement. Thompson-Hayward assigns these rulings as error.

The only evidence taken on the hearing of motion and plea is the testimony of the district manager of Thompson-Hayward, who testified that: he had been district manager of Thompson-Hayward, New Orleans, since 1936; he had under his control and supervision customers since 1936; he definitely has personal knowledge of the operations of Thompson-Hayward insofar as they relate to sales in Alabama and that is under his jurisdiction; Thompson-Hayward has not, since April of 1960, owned any real property in Alabama, owned nothing in Alabama, has no warehouse under lease and stored property, has had none since April of 1960, has no employee living in Alabama, has had none since 1960; Thompson-Hayward has never had any employees living in Alabama since 1926 and never owned any property of any type in Alabama; Thompson-Hayward is a corporation, was chartered in Missouri until June 1, 1962 or 1961, when it merged

with a Delaware corporation; since April, 1960, Thompson-Hayward has not been chartered in Alabama; Thompson-Hayward has had only one salesman at any time that traveled through this area, making his headquarters in New Orleans; the salesman, Ashworth, who traveled here in April of 1960 left the company later in the year and has been replaced with another salesman; both men lived in New Orleans, Louisiana; the salesman travels in Alabama approximately one week out of the month; his schedule is under the control of the witness; Thompson-Hayward had no written contract with the salesman, Ashworth; he was paid so much a month and received a car allowance for using his own automobile; the arrangement is the same with the present salesman; the salesman "can accept orders but only through final orders by" the witness; the salesman tries to sell merchandise; he uses a written order blank supplied by the company; an order cannot be shipped out of New Orleans to any point until the credit is approved by the sales manager, office manager, or the witness; since April of 1960 the salesman has had no authority to bind the company on orders taken in Alabama; final approval has to come through New Orleans office; Thompson-Hayward has never exercised any control over Alabama customers as to the price for which they sell the products of Thompson-Hayward; under a "protected stock arrangement," if the customer has unsold merchandise, Thompson-Hayward agrees to take up what they have left, take it to New Orleans and issue credit, but "We don't like that; it is strictly to meet competition"; the salesman has no authority, on his own, to settle disputes with customers; the salesman can discuss, obtain pertinent information, and bring it back to the witness or sales manager, who decides what is to be done; after the order is approved, products are shipped into Alabama from New Orleans; Thompson-Hayward sells to four customers in Baldwin County, where action was brought; Thompson-Hayward has been making sales in Alabama since 1931, has over 1500 different items, had between 25 and 30 customers in Alabama in April of 1960; Thompson-Hayward had some pesticides or herbicides registered with the Department of Agriculture and Industries in Alabama in 1960 but witness does not recall how many; the salesman called on Bertolla in 1960; the salesman calling on customers would spend at least one week out of each month in this particular area; on occasion, Thompson-Hayward ships C.O.D.; its customers may resell at any price fixed by the customer; there is a suggested price on most things; Thompson-Hayward would not sell directly to a farmer but would tell him "that we had people handling our materials, or buying materials from us that would no doubt have some stocked that they would be glad to sell; we would not ship directly"; all products are shipped under labels which give specific instructions for use of the product; a salesman, on inquiry, "would recommend one product *to* another to a customer to use on a crop"; the salesman would give the man one of the labels; the witness sent salesmen to Alabama and encouraged them to call on customers and promote the sale of company products; the witness came to Alabama possibly in May, 1960; he was present when pictures were taken of the container; he came to Alabama to investigate the unfortunate occurrence in Baldwin County; he came as representative of Thompson-Hayward; Thompson-Hayward has no agency in Alabama.

This action was commenced April 19, 1961. The occurrences which form the basis of the action took place in May, 1960, and thereafter.

In summary, the evidence taken on hearing of the motion and plea tends to show that: Thompson-Hayward had been making sales in Alabama since 1931; had 25 to 30 customers in Alabama, 4 of whom were in Baldwin County; that defendant employed one salesman who spent approximately one week of each month in Alabama; that he was a soliciting agent without authority to bind the company. We think the evidence warrants the inference

that there was a continuous flow of defendant's products into this state. We are called to decide whether such activity is sufficient to constitute doing business in this state so as to give the courts of this state jurisdiction in this case.

Whether a non-resident corporation was doing business in a state, so as to subject the corporation to the jurisdiction of that state and its courts, has been the issue in many decided cases. One of the later cases decided by this court is Boyd v. Warren Paint & Color Company, 254 Ala. 687, 49 So.2d 559, where this court said:

"It is, of course, recognized that a state may not make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations, that is, where the defendant is not present in the state. But since a corporation must act vicariously and its presence in the state can only be manifested by the acts of its authorized agents, the question is to be determined by the activities of those agents and the character of business done. And each case must depend on its own facts. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; International Harvester Co. v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479.

"..........

"But the traditional theory, thought to be crystalized in federal jurisprudence, that personal jurisdiction over a foreign corporation cannot be acquired when the only basis is 'mere solicitation' of business within the borders of the forum's sovereignty, (Citations Omitted.), seems to be no longer controlling. Recent federal decisions have considerably impinged upon that concept. (Citations Omitted.)

"The rule that we deduce from these late decisions, of which International Shoe Co. v. State of Washington is

the 'bellwether,' is that the regular and systematic solicitation of orders in the state by appellant's salesmen, resulting in a continuous flow of appellant's products into the state, is sufficient to constitute doing business in the state so as to make the corporate defendant amenable to suits in its courts, provided there be included in the inquiry the factor of estimating the inconvenience which would result to the corporation from a trial away from its home. (Citation Omitted.)" [254 Ala. at pages 689, 690, 49 So.2d at pages 561, 562]

Many authorities are cited in the Boyd case. To repeat the discussions in them would serve no useful purpose and would unduly lengthen this opinion.

The testimony shows that, for more than a year before this action was begun, Thompson-Hayward's salesman traveled in Alabama one week of each month soliciting orders, and that Thompson-Hayward made sales in Alabama as a result of orders obtained by the salesman. We are of opinion that the testimony shows the regular and systematic solicitation of orders in this state, and in Baldwin County, resulting in a continuous flow of Thompson-Hayward's products into Alabama sufficient to constitute doing business here so as to make that defendant subject to suit in the courts of this state in an action for a tort committed in this state.

It follows that the court did not err in denying the motion to quash or in overruling the plea in abatement.

Thompson-Hayward assigns as error the refusal of its requested affirmative charge, and argues that refusal was error because plaintiffs failed to prove that Thompson-Hayward manufactured and sold the vine killer which allegedly caused the death of plaintiffs' cattle. Thompson-Hayward and Bertolla were each represented by separate counsel in the trial court and on the appeal.

On the trial, when plaintiffs rested, Thompson-Hayward moved to exclude

plaintiffs' evidence on the ground that plaintiffs' evidence failed to make out a prima facie case. The court denied the motion, whereupon Thompson-Hayward rested and requested the affirmative charge which the court refused.

█ We have read all the testimony and have considered plaintiffs' argument that the activities of Thompson-Hayward after the cattle died furnished at least a scintilla of evidence to prove that Thompson-Hayward manufactured and sold the vine killer which plaintiffs used. As we read the evidence, it had not been shown, when plaintiffs rested, that Thompson-Hayward manufactured and sold to Bertolla the very substance which plaintiffs had purchased from Bertolla and sprayed on the potatoes. Plaintiffs' claim against Thompson-Hayward rests on proof of the fact that this defendant had manufactured and placed on the market the particular dangerous substance which plaintiffs sprayed on the potatoes and which caused the death of the cattle. Thompson-Hayward is not shown to be liable unless it be shown that Thompson-Hayward manufactured and placed on the market the very substance complained of. We are, therefore, of opinion that Thompson-Hayward was entitled to the affirmative charge at this time and that the court erred in refusing it.

The trial, however, did not end at this point. The defendant, Bertolla, called witnesses and we think their testimony sufficient to provide at least a scintilla of proof that Thompson-Hayward sold the particular drum of vine killer to Bertolla, who later sold it to plaintiffs. Plaintiffs did not offer any more evidence and neither did Thompson-Hayward.

Plaintiffs insist that the attorneys for Thompson-Hayward remained in the courtroom, took part in the trial by assisting counsel for Bertolla, and thereby waived any rights acquired by the failure of proof against Thompson-Hayward.

Plaintiffs appear to agree that the evidence presented by Bertolla is not available against Thompson-Hayward unless, by further participation in the trial, counsel for Thompson-Hayward made the evidence available. Plaintiffs say in brief:

". . . . It does seem to us however, that if this Court is going to follow the decision in the Howard Hall Company Case (and we think that it is a correct statement of the law) that there is going to have to be some restriction placed upon counsel for a defendant in a like situation who adopts this particular approach to the defense of a particular piece of litigation. Certainly a defendant should not be compelled to come forward with testimony, nor should he be compelled to be bound by any additional testimony, where, at the time of the conclusion of the testimony of his adversary, no case has been established against him; but where that defendant continues to actively participate in the trial of the case by assisting counsel for another co-defendant by commenting to the trial court on matters of evidence by requesting further special instructions or by arguing anything to the jury other than their belief of the testimony, then we submit that such a defendant might well be held to have withdrawn his abandonment of the defense of the case or waived any rights which he may have previously acquired by the failure of proof against him. . . . ."

In Anderson v. Howard Hall Company, 272 Ala. 466, 131 So.2d 417, the action was against two defendants, one a corporation and the other an individual. At the conclusion of plaintiff's testimony, the court announced that it would give the affirmative charge for the corporate defendant, whereupon witnesses and counsel for the corporation left the courtroom and the case proceeded against the other defendant. The sole question on the appeal was whether plaintiff was entitled to go to the jury against the corporation. This court held that the trial court did not err in giving the affirmative charge for the corporation. In the opinion this court said: ". . . . Howard Hall (the cor-

porate defendant) rested its case at the close of plaintiff's testimony. It does not seem to us, therefore, that the testimony of Mr. Haynes (the individual defendant) given as a part of his own case, after objection was made, has any bearing on this appeal." (Par. Supplied.)

There is this difference between the Anderson case and the instant case; there the affirmative charge was given, here it was refused; there defendant's counsel left the courtroom, here defendants' counsel remained in court. In Anderson, this court refused to consider the testimony taken after the corporate defendant rested. In the case at bar, plaintiffs contend that we ought to consider, against the corporate defendant, the testimony presented by the other defendant after the corporation rested; because, as we understand the argument, of subsequent acts by counsel for the corporate defendant.

The record discloses that after Thompson-Hayward rested, its counsel remained in court. Counsel for Bertolla offered in evidence a label which was attached to the pleas of Thompson-Hayward. Plaintiffs' counsel objected. The court said "You can't introduce it with the pleas on there; you will have to remove that," whereupon counsel for Thompson-Hayward said: "As far as I know, the pleas are still good."

Later, plaintiffs' counsel objected to Bertolla's counsel asking questions as to the label in his hand which is a part of Thompson-Hayward's plea. Bertolla's counsel said: "This is a part of the plea," and Thompson-Hayward's counsel said: "Pull it off the plea."

Still later, during direct examination of the defendant, Mr. Alex Bertolla, counsel for plaintiffs said he would like the record to show that counsel for Thompson-Hayward is still participating in the trial of this case. Counsel for Thompson-Hayward said that was not a correct statement. The court said: "You gentlemen are participating by wiggling your head." The record indicates there was a conversation between counsel for Bertolla and counsel for Thompson-

Hayward. The court said it did not know what the conversation was, ". . . . but you are getting yourself in a hole." Counsel for Bertolla offered in evidence a part of Thompson-Hayward's pleading. The court said: "Yes, you are introducing the pleading of these gentlemen with their permission." Counsel for Thompson-Hayward said: "We don't take any action or any part, or consent or object to anything any of the counsel do." The court said: "I would expect that, but at the same time you gentlemen are sitting there and permitting yourselves to be involved—I am telling you now." Counsel for Thompson-Hayward said: "Would your Honor prefer that we move?" and the court said: "No, sir, you can get over there next to the jury if you like—if they want to do that, okay." Counsel for plaintiffs asked that the record show that, after Thompson-Hayward rested, counsel for Thompson-Hayward continued to sit at the counsel table and consult with counsel for Bertolla. The court said let the record show that.

We think it apparent that counsel for Thompson-Hayward could not, with propriety, leave the courtroom after the court had refused their request for affirmative charge. It does not appear that the counsel examined any witness or objected to questions propounded to witnesses. The counsel stated that they did not consent or object to anything other counsel do.

■ Thompson-Hayward was still a defendant in the case. We think its counsel had a right to request charges and to argue to the jury. As to the limit of the action such counsel might take after resting their case without being bound by testimony offered by the other defendant, we will not undertake to set a boundary, but so far as this record shows, we do not think that the action of counsel for Thompson-Hayward amounted to reopening the case and making the testimony offered by Bertolla available to make out a case against Thompson-Hayward.

Of the errors argued by Bertolla we will consider one. The others are either with-

out merit or probably will not occur on another trial.

Bertolla argues that the court erred in overruling the grounds of demurrer to the complaint which take the point that it does not sufficiently appear that Bertolla owed any duty to plaintiffs which Bertolla negligently failed to perform. The argument is that the allegations fail to show such a duty because "there is no allegation nor suggestion that the Defendants Bertollas, sold the Plaintiff the inherently dangerous substance complained of and the Complaint wholly fails to show that the Plaintiff purchased the inherently dangerous substance from Bertollas, . . . ."

Plaintiffs say: "The complaint does allege that Appellant Bertolla sold the product and that the Appellees purchased the product. *It does not allege that Appellees purchased the product from Appellant Bertolla* but it charges that Appellant with negligence in failing to warn of the nature of the product and most assuredly, if Appellees had not proven a purchase from Appellant Bertolla then the trial court should have directed a verdict against the Appellees." (Emphasis Supplied.)

Plaintiffs say further that if the court erred in overruling those grounds of demurrer, it was error without injury because the error was cured when the omitted fact was supplied by the testimony, citing Life & Casualty Ins. Co. v. Peacock, 220 Ala. 104, 124 So. 229.

Bertolla argues that because the complaint fails to state a cause of action, the error was not cured by the evidence; that it is the settled law of this state that a judgment for the plaintiff will be reversed where the facts appear on the face of the complaint and show that no substantial cause of action was disclosed, though the complaint was not demurred to. American Tie & Timber Co. v. Naylor Lumber Co., 190 Ala. 319, 324, 67 So. 246.

■ This court has said that, in negligence cases, the complaint must allege facts from which a duty of care arises on the part of the defendant; the relationship of the parties must be stated in order to establish a duty; and, without the element of duty, a cause of action is not stated. Stanton v. Marsh, 274 Ala. 501, 503, 150 So.2d 363.

■ Though there be a defect of averment in stating the cause of action in the complaint, if both parties introduce such relevant evidence as they desire and the court correctly charges the law on the subject, the ruling of the court in improperly overruling demurrer to the complaint will not require reversal for that it was without injury. But there are circumstances when the rule will not apply. It will not apply, as an instance, when the complaint does not state a cause of action without the matter which was omitted. City of Mobile v. McClure, 221 Ala. 51, 53, 127 So. 832.

We must inquire whether the complaint states a cause of action. Plaintiffs' cause of action rests on the rule, or exception, that one who sells or delivers an article, which he knows to be imminently dangerous to life or limb, to another, without giving notice of its qualities, is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not. Sterchi Bros. Stores v. Castleberry, 236 Ala. 349, 352, 182 So. 474.

The breach of duty charged against defendants is the failure to give notice to or warn plaintiffs of the dangerous nature of the vine killer. Do the facts alleged in the complaint show that the defendant, Bertolla, owed a duty to warn plaintiffs? As plaintiffs candidly admit in brief, it is not alleged that plaintiffs purchased the vine killer from Bertolla. It is not alleged that Bertolla ever had possession of or any connection whatsoever with the particular substance which plaintiffs sprayed and which allegedly caused the death of plaintiffs' cattle. The rule, upon which plaintiffs' right to recover is based, imposes the duty on one who, with knowledge of its dangerous quality, manufactures or sells

**292**

an imminently dangerous article and fails to warn. It is not alleged that Bertolla manufactured the dangerous article. It is not alleged that Bertolla sold it. How, then, did Bertolla owe a duty to warn?

We are of opinion that it must follow that the complaint fails to show that Bertolla owed a duty to warn plaintiffs, and, therefore, fails to state a cause of action.

Although it is not assigned for error or argued, it seems appropriate, in view of another trial, to observe that the plaintiffs do not appear to allege in direct and positive terms that Thompson-Hayward manufactured and put on the market the particular substance which plaintiffs purchased and sprayed on their potatoes.

For error in refusing the affirmative charge for Thompson-Hayward and because the complaint does not state a cause of action against Bertolla, the judgment is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.