195 So.2d 527

James A. RAMSEY

v.

SENTELL OIL COMPANY et al.

6 Div. 282.

Supreme Court of Alabama.

Feb. 16, 1967.

Walter B. Henley, Northport, for appellant.

Robt. B. Harwood, Jr., of Clement Rosen, Hubbard & Waldrop, Tuscaloosa, for appellee.

MERRILL, Justice.

This appeal is from a judgment of nonsuit, induced by the sustaining of demurrers to all five counts of a complaint, as amended. Plaintiff was injured when a steel drum that formerly held tractor fuel exploded when a cutting torch was applied to it.

Count One reads as follows:

"The Plaintiff claims of the Defendants the sum of TWO HUNDRED THOUSAND AND NO/100 ($200,000.-00) DOLLARS, as damages and as grounds for the damages claimed, the Plaintiff alleges as follows:

"1:01. On, to-wit; April 9, 1963, the Defendants were in the business of manufacturing, selling and distributing gasoline, tractor fuel, and other petroleum products, and operated a wholesale department or distributorship in Northport, Alabama, on Main Avenue.

"1:02. The Defendants had established a dealership in the sale of its products through Ike W. Maddox (herein referred to as Maddox) to the general public. Maddox operated a service station on U. S. Highway No. 43, about ten (10) miles North of Northport, Alabama, in Tuscaloosa County, Alabama, and through this service station sold the products of the Defendants which had been sold to the Defendants to Maddox.

"1:03. Maddox also operated a farm and the Plaintiff was employed by Maddox as a farm hand and as an employee at the service station, dispensing the Defendants' products. The Plaintiff was

performing his duties as a farm hand at said time and place and was instructed by Maddox to take a steel drum, which had been used prior to that time for the storage of the Defendants' products, to a welding shop in Tuscaloosa, Tuscaloosa County, Alabama and to have a hole cut in the top of the drum by a cutting torch (a device using a flame to cut metal and herein referred to as cutting torch) so that the drum could be used for the purpose of holding water to spray with chemical cotton poison.

"1:04. The drum had been used prior to the said time and place to store and contain or transport the Defendants' products, tractor fuel and gasoline, at said time and place the drum still contained fumes from the prior storage of the Defendants' products, gasoline and tractor fuel, in the drum. The Plaintiff took the drum and filled it with water and used the drum of water prior to taking it to the welding shop to have a hole cut in it. The Plaintiff also washed out the drum with water. The Plaintiff was convicted and believed that the use of the water in the drum and the washing out of the drum with water had removed all dangerous fumes therefrom. The Plaintiff took the drum on, to-wit: April 9, 1963, to a welding shop and asked the operator of the welding shop if it were same (sic) to cut a hole in it. The operator of the shop asked the Plaintiff if the drum had been used for water since it had been used to contain tractor fuel or gasoline. The Plaintiff told him that it had been used to store water and had been washed out with water since it had been used to store tractor fuel or gasoline. The operator of the welding shop then informed the Plaintiff that it was safe to cut a hole in the drum with the cutting torch and proceeded to do so by striking the top of the drum with the open flame of the cutting torch and at the moment when the flame entered the drum, the drum exploded, and the Plaintiff was injured

and damaged as set out in Paragraph 2:01 herein.

"1:05. The Plaintiff alleges that the Defendants placed gasoline on the open market without adequately instructing its distributors, employees, agents, or operators of service stations to store gasoline in drums would cause the drum to become contaminated and harmful and dangerous and render said drum dangerous when it was used near heat, fire, sparks or open flame, even after the contaminated drums had been washed out with water.

"1:06. The Defendants should have warned the Plaintiff, as one of the employees of one of the Defendants' distributors, service station operators, or agents, in the proper use and handling of such drums after they had been used for storage of the Defendants' tractor fuel or gasoline.

"1:07. The drum was imminently dangerous when it was placed near flame, sparks, heat, or open fire, and the Defendants knew that drums which had been used to store the Defendants' tractor fuel or gasoline would still be dangerous even though the drum had been washed out with water, but this danger was not known to the Plaintiff, nor ever made known to him by instructions from the Defendants or anyone else.

"1:08. The Defendants then negligently allowed the Plaintiff to use the drum after it had been filled with gasoline, and washed out with water, and the Defendants did not exercise reasonable diligence to notify the Plaintiff of such danger, and the Plaintiff's injuries and damages as set out in Paragraph 2:01 were all a direct and proximate consequence of the said negligence of the Defendants.

"The Plaintiff alleges that as a direct and proximate consequence of the negligent conduct, ommissions, and acts of the Defendants complained of above, the Plaintiff was injured and damaged as set out in Paragraph 2:01 as follows:

"2:01. Plaintiff suffered a severe shock to his nervous system; suffered his body and limbs to be bruised, lacerated and sore; suffered great physical pain and mental anguish; suffered one of his legs to be severely injured, lacerated, cut and bruised; and Plaintiff was permanently injured. Plaintiff was caused to become obligated to pay large sums of money, and will become obligated to pay large sums in the future, for doctor's bills, nurses' bills, hospital bills and medical bills in and about his efforts to heal and cure his said injuries; and Plaintiff has been caused to lose a long period of time from his employment in Tuscaloosa County, Alabama, and Plaintiff is still unable to work and will be unable to work for a long period of time in the future.

"2:02. Plaintiff alleges that all of the above described injuries and damages were caused by the negligence of the Defendants in the acts, omissions, and negligent conduct of the Defendants complained of and set forth in Paragraphs 1:01 through 1:08 about and in and about the manufacture, sale, and distributing of the Defendants' petroleum products without adequate warning as to the proper and safe use of the Defendants' products, hence this suit."

■ We have held many times that all presumptions are indulged against the pleader on demurrer. Vulcan Materials Co. v. Grace, 274 Ala. 653, 151 So.2d 229; McKinley v. Simmons, 274 Ala. 355, 148 So.2d 648.

■ In Alabama, negligence may be alleged in general terms, but a complaint is not sufficient unless facts are averred which disclose a duty owed by the defendant to the injured party and a breach of that duty. Gilbert v. Gwin-McCollum Funeral Home, 268 Ala. 372, 106 So.2d 646, and cases there cited.

■ When considering the sufficiency of the allegations on demurrer, the court will assume that the pleader has stated his cause as favorably as possible, and the averments will not be aided by implications or intendments, but the pleading will be construed most strongly against him. Gilbert v. Gwin-McCollum Funeral Home, supra.

■ There are at least two fatal defects in Count One which were pointed out by demurrer. It fails to show the connection between the defendants and the steel drum, including a failure to show ownership of the drum or who stored defendants' products in it. The other defect is the failure to connect the time and place of the injury with any time or place when defendants had anything to do with any products which might have been stored sometime, somewhere, in the drum by someone.

In short, no duty is alleged as owing by the defendants to plaintiff, the breach of which proximately caused plaintiff's injury.

In Thompson-Hayward Chemical Co. v. Childress, 277 Ala. 285, 169 So.2d 305, the plaintiffs attempted to plead negligence on the part of the defendant for failing to give notice of the imminently dangerous qualities of a vine killer that caused the death of plaintiffs' cattle. The complaint in that case alleged that the defendant sold the product causing the injury and that plaintiffs purchased the same, but did not specifically allege that the plaintiffs purchased the vine killer from the defendant. This court held that the facts alleged in the complaint failed to show that the defendant owed a duty to warn plaintiffs.

Here, plaintiff alleges that a steel drum had become contaminated with defendants' products, but he does not specifically state that defendants had sold the particular products causing the contamination, or that the contamination occurred at a time when the defendants were in the business of handling petroleum products, or that there was any direct connection be-

tween the defendants and the products of the defendants which were stored in the steel drum.

The demurrer was properly sustained to Count One.

Count Two does say that "prior to and including, to-wit; April 9, 1963;" defendants were engaged in the business of selling or distributing gasoline or tractor fuel, so we do have an averment that defendants could have been in the fuel business when the drum became contaminated. But the relationship between plaintiff and the defendants is not shown, nor is the manner in which plaintiff might have obtained any of defendants' gasoline or tractor fuel. There still was no allegation showing a connection between the drum and defendants.

Count Three adopts part of Count One but the new part fails to show that any alleged negligence on the part of defendants injured plaintiff in any way. Count Three was subject to some of the same grounds as were the first two counts and the demurrer was correctly sustained to the third count.

Count Four adopts all of Count Two except that the word "inherently" is substituted for the word "imminently" wherever the word appears. This does not remove the infirmities contained in Count Two and the demurrer was properly sustained.

Count Five has several defects which are pointed out by demurrer, but it is sufficient to say that it fails completely to identify the relationship between the defendants and the steel drum; and it merely states that the drum exploded, without alleging any cause of the explosion.

The demurrer was properly sustained.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.