Mrs. Janet M. LEE and Charles McDowell Lee, Plaintiffs-Appellants,

v.

**GREAT NORTHERN NEKOOSA CORPORATION, Defendant-Appellee.**

No. 71-2944.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1972.

Charles E. Porter, J. Theodore Jackson, Jr., Montgomery, Ala., for defendant-appellee.

Before RIVES, BELL and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

Here, of necessity, we must interpret and apply Alabama constitutional and statutory provisions relating to the validity of contracts with foreign corporations which have failed to qualify to do business in Alabama.[1]

The Lees brought suit against Nekoosa seeking a declaratory judgment that a lease made between the Lees, as Lessors, and Nekoosa's predecessor in interest, Southern Land Timber and Pulp Company, as Lessee, is void. Most of the relevant facts were stipulated (App. pp. 113–126). Only those facts essential to an understanding of this opinion will be stated.

Southern entered into the lease[2] with the Lees in April, 1961. In 1959 or 1960 Southern opened an office in Troy, Pike County, Alabama, which it maintained until it conveyed its assets in 1962 to Great Southern Land and Paper Company which continued to use this office. Both Southern and Great Southern had employees who lived in Troy and worked out of the Troy office. Among the assets which Southern had acquired and conveyed to Great Southern were timber leases of approximately 14,000 acres, of which the lease involved in this case is typical, and also approximately 8,000 acres of land which Southern had purchased outright. Southern never did qualify to do business in Alabama. On July 21, 1963, Great Southern qualified to do business in Alabama.

Thomas S. Lawson, Jr., Champ Lyons, Jr., Montgomery, Ala., Robert H. Harris, Decatur, Ala., for plaintiffs-appellants.

1. We regret our inability to certify the questions to the Supreme Court of Alabama for its authoritative resolution as would be possible if the case involved Florida law. Section 25.031, Florida Statutes Annotated as implemented by Rule 4.61 of the Florida Appellate Rules, 32 F.S.A. See Clay v. Sun Insurance Office, 1960, 363 U.S. 207, 212, 80 S.Ct. 1222, 4 L.Ed.2d 1170; Green v. American Tobacco Co., 5 Cir. 1962, 304 F.2d 70, 86.

2. The lease was for a term of 66 years beginning April 10, 1961, for the timber and timber rights on nearly 3500 acres of land located in Pike and Barbour Counties, Alabama, at a rental to be calculated by production, but to be not less than $11,201.12 per year.

Great Southern was acquired by Nekoosa in a statutory merger in June, 1965. Nekoosa qualified to do business in Alabama on March 8, 1966. The terms of the lease were faithfully observed by both lessor and lessee until August, 1970, when the Lees learned of Southern's failure to qualify. One month later on September 23, 1970, the Lees filed this suit to have the lease declared void.

Nekoosa pleaded at least three defenses: (1) That the lease contract was valid from its inception; (2) that the Lees are barred from relief by laches; and (3) that after Great Southern and Nekoosa qualified in Alabama the Lees by their conduct ratified the lease contract or adopted it as their contract with Great Southern and Nekoosa respectively.

The district court in thorough, but as yet unreported findings and conclusions, sustained the contract on a theory of laches. We reach neither that theory nor the theory of ratification or adoption, because we are of the view that the lease contract was valid from its inception. For that reason we affirm the judgment of the district court.

Section 232 of the Constitution of Alabama provides:

"No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. Such corporation may be sued in any county where it does business, by service of process upon an agent anywhere in the state. The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital employed in this state. Strictly benevolent, educational, or religious corporations shall not be required to pay such a tax."

The Legislature of Alabama has provided money penalties against any foreign corporation which does business in the State without qualifying. Code of Alabama, Title 10 §§ 21(29) and 21(93). In addition to money penalties, the Legislature has provided in three separate Code sections as to the effect on contracts of a foreign corporation doing business in the State without qualifying:

Title 10, § 21(89) provides in pertinent part:

"§ 21(89). *Foreign corporations not qualified to do business in state; contracts or agreements; service on.*—All contracts or agreements made or entered into in this state by foreign corporations which have not qualified to do business in this state shall be held to be void at the suit of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing herein shall abrogate the equitable rule that he who seeks equity must do equity; * * * In all suits against such foreign corporation or against any person claiming under such foreign corporation by virtue of such void contract, the foreign corporation or such person claiming under it shall be held to be estopped from setting up the fact that the contract or agreement was so made in violation of law."

Title 51, § 342 provides:

"§ 342. *Void contracts.*—All contracts made in this state by any foreign corporation which has not first complied with the provisions of the three preceding sections [relating to qualification requirements] shall, at the option of the other party to the contract, be wholly void."

Title 51, § 345 provides in pertinent part:

"No corporation, its agents, officers or servants shall transact any business for or in the name of such corporation within the state of Alabama without having first procured said permit and

all contracts, engagements or undertakings or agreements with, by or to such corporations made without obtaining such permit shall be null and void."

Two of these provisions, Title 10, § 21(89), and Title 51, § 342, are expressly limited in their application to "contracts made in this State." The third, Title 51, § 345, is impliedly so limited, and especially so when construed *in pari materia* with the other two Code sections. These statutes have no extraterritorial operation. Contracts made outside of Alabama are valid when made. The making of such contracts outside the State does not constitute doing business in the State. If the contract is to be performed in the State of Alabama, it is its *performance* which would amount to doing business in Alabama. The pertinent Alabama constitutional and statutory provisions are all directed against doing business in the State without first qualifying. There is time to qualify between the execution of the contract and entry upon its performance. If at such time Southern had so qualified, the regularity of its conduct could not reasonably be questioned.

It is not questioned that the present lease contract was made in Georgia. It had been executed by the Lees in Alabama, and became a binding contract when Southern executed it in Manchester, Georgia, and mailed to the Lees an executed copy together with the first year's rent. At that point in time the lease contract was entirely valid. When Southern entered upon performance of the contract in Alabama without qualifying, it violated the Alabama statutes and was subject to the money penalties provided and also to an inability to enforce the contract. The failure of Southern to qualify and the slight delays in qualification by Great Southern and Nekoosa did not operate to render void or voidable the lease contract which was valid in its inception. The Lees brought this suit many years after Southern's interest had passed first to Great Southern and then to Nekoosa, and after each of them had in turn qualified to do business in Alabama. Nekoosa could then successfully defend because the lease contract had been valid from its inception.

It must be conceded that there is language in Chattanooga National Building and Loan Association v. Denson, 1903, 189 U.S. 408, 23 S.Ct. 630, 47 L.Ed. 870, which might lead to a different conclusion, but we do not consider that case applicable because the earlier Alabama statutes there construed were not limited in application to contracts made in the State of Alabama. Thomas v. Birmingham Ry., Light & Power Co., M.D. Ala.1912, 195 F. 340, relied strongly on the Supreme Court's decision in the *Denson* case, *supra,* and expressed the view "that the place of execution of the contract is of no moment." In any event we must look to the Alabama state courts rather than to the federal courts for authoritative construction of the State constitutional and statutory provisions. The Lees rely on Langston v. Phillips, 1921, 206 Ala. 174, 89 So. 523. While the Supreme Court of Alabama in that case referred to the *Denson* case, *supra,* it nonetheless stated "the issue to be decided" as "whether the contract for the sale of the stock in question was made in Alabama, or in Delaware, where, of course, *the law of this state had no effect.*" (Emphasis added.) On the facts of that case, the Court held that "the contract became operative and binding on defendant in this state." Nonetheless the decision of the Supreme Court of Alabama in *Langston* supports the views which we have expressed. Indeed no Alabama case has been cited, nor have we found any, which holds to the contrary.

Vandiver v. American Can Co., 1914, 190 Ala. 352, 67 So. 299, 301, supports the views which we have expressed. Again in Leverett v. Garland Co., 1921, 206 Ala. 556, 90 So. 343, 344, the Supreme Court of Alabama authoritatively

so construed the Alabama law when, in speaking of the averments of Plea 2 in that case, it said:

"The debt may have been contracted outside of Alabama, or the debt may be the result of an interstate transaction; on such matters the statute and Constitution have no application. Collier & Pinckard v. Davis Bros., 94 Ala. 456, 10 South. 86; Vandiver v. Am. Can Co., 190 Ala. 352, 67 South. 299; section 232, Const.1901; section 3642, Code 1907."

90 So. at 344. Again in speaking of Plea 4, the Court stated:

"This plea, like plea 2, does not aver where the contract was made, where the debt was contracted, or where the agreement was consummated; it may have been in Alabama, outside of Alabama or partly within or partly without Alabama—interstate. For the transaction to receive the condemnation of the statute it must be in Alabama. The plea must aver it. This plea does not. Collier v. Davis, 94 Ala. 456, 10 South. 86; Vandiver v. Am. Can Co., 190 Ala. 352, 67 South. 299."

90 So. at 344. Further parts of that opinion and decision are to like effect. The clearest and most explicit statement of the limited operation of the Alabama constitutional and statutory provisions was made by the Court of Appeals of Alabama speaking through Judge Brown, later a distinguished Justice of the Supreme Court of Alabama, in Citi-

zens' Nat. Bank v. Bucheit, 1916, 14 Ala.App. 511, 71 So. 82, 86:

"It is manifest that these regulations have no extraterritorial operation, and contracts made outside of this state, although they are to be performed in the state, are not within their influence so as to render them absolutely void in the making. Alexander v. Ala. Western R. Co., 179 Ala. 480, 60 South. 295.

"Where the contract is to be performed in this state, although not entered into here, and in the performance the nonresident corporation must engage in business in this state, although the contract is valid, the policy of the state, as evidenced by the Constitution and statutes, compels the courts of the state to refuse their aid to such offending corporation in the enforcement of such contract or recovering the benefits accruing thereunder. Alexander v. Ala. Western R. Co. [179 Ala. 480, 60 South. 295], supra; Ala. Western Ry. Co. v. Talley-Bates Const. Co., 162 Ala. 396, 50 South. 341; Geo. W. Muller Mfg. Co. v. First National Bank of Dothan, 176 Ala. 229, 57 South. 762." [3]

In this case we are bound by the authoritative decisions of the Alabama state courts to affirm the judgment of the district court for the reason that, insofar as the pertinent Alabama constitutional and statutory provisions are concerned, the lease contract here involved made in Georgia has been valid from its inception in April, 1961.

Affirmed.

---

3. Inferential support for the views which we have expressed may be found in later Alabama cases. Friedlander Bros. v. Deal, 1928, 218 Ala. 245, 118 So. 508; State v. National Cash Credit, 1932, 224 Ala. 629, 141 So. 541; State v. City Stores Co., 1965, 277 Ala. 412, 171 So.2d 121; State v. Aluminum Company of America, 1966, 280 Ala. 144, 190 So.2d 698.