SAR MANUFACTURING COMPANY, INC., Plaintiff-Appellant,

v.

DUMAS BROS. MFG. CO., INC., et al., Defendants-Appellees.

No. 75–2950

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1976.

James A. Brice, Jackson, Ala., for plaintiff-appellant.

Charles J. Fleming, Mobile, Ala., for Dumas Bros. Mfg. Co., Inc.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Before BROWN, Chief Judge, GODBOLD and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is a diversity action in which plaintiff, a Texas corporation, sued the defendants who were co-makers of a promissory note executed to the plaintiff in payment for a product called polyurethane foam which was manufactured by the plaintiff in another state. After a trial on the merits the District Court held for the defendant reasoning that applicable Alabama statutes [1] prohibited the plaintiff from enforcing this contract in Alabama courts because the corporation was not qualified to do business in the state. We affirm.

Two issues are presented by this appeal: (i) Does the activity of the plaintiff corporation in the state of Alabama constitute doing business in the state within the meaning of the applicable statutes, and (ii) if so does the application of these statutes in this factual setting impede interstate commerce so as to be in contravention of the Commerce Clause of the Constitution. Art. I § 8.

The facts pertinent to the issues to be considered on this appeal may be summarized as follows. The plaintiff is engaged in the sale of polyurethane foam which is manufactured in one of the plaintiff's plants located in Texas, Georgia and Mississippi. The plaintiff has generated substantial income over the last several years by selling this product to Dumas Brothers Manufacturing Company, Inc. and to other Alabama concerns with a need for the product. Prior to August of 1973 the sales were consummated by orders placed by mail, telegram or telephone with the seller's Houston office. However, after August 27, 1973 the plaintiff leased a warehouse in Jackson, Alabama which was used to receive and store the polyurethane foam for sale to Dumas Brothers and some processing of the foam was done at the warehouse.[2] The plaintiff employed seven full or part-time employees at the warehouse and maintained two vehicles at the warehouse on a full-time basis.

Due to financial setbacks suffered by Dumas Brothers the plaintiff required the defendants to execute the promissory note which is the subject of this law suit in payment for goods which had already been delivered. The warehouse served to mutually benefit both the plaintiff and Dumas Brothers for it saved time in delivery of the product to Dumas Brothers and assured the plaintiff of securing Dumas Brothers' business.

In addition to the operation of the warehouse the plaintiff had several salesmen who visited various customers in the state of Alabama each of which spent approximately 1–6th of their time in Alabama and were salaried as opposed to commissioned salesmen.

The promissory note which is the subject of this appeal was executed in Alabama on February 19, 1974 by the president of the plaintiff and representatives of the defendant. Of course, performance on the promissory note was to occur in Alabama.

We have no difficulty in affirming the holding of the District Court that the plaintiff's conduct constituted

---

1. Title 51, Section 342 of the Code of Alabama states as follows:

    All contracts made in this state by any foreign corporation which has not first complied with the provisions of the three preceding sections (dealing with qualification) shall, at the option of the other party to the contract, be wholly void.

    Title 10, Section 21(89) of the Code of Alabama states in part as follows:

    All contracts or agreements made or entered into in this state by foreign corporations which have not qualified to do business in this state shall be held void at the suit of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement . . . .

2. App. at 127.

doing business under the terms of the Alabama statutes.[3] Alabama courts have held that the mere solicitation or sale of goods by non-resident corporations to Alabama customers is a sufficient nexus to constitute doing business within the state. *See Thompson-Hayward Chemical Company v. Childress*, 1964, 277 Ala. 285, 169 So.2d 305; *see also Marcus v. Watkins*, 1966, 279 Ala. 584, 188 So.2d 543 (where merely holding sales meetings several times during the year in Alabama, demonstrating new products, taking orders and having commissioned salesmen operating in the state was held to be doing business within the meaning of the statute). Moreover, several Alabama cases have held that the mere acceptance of a contract sued on in Alabama is sufficient to require the plaintiff to meet the qualification requirements of the statutes. *See, e. g., Royal Insurance Company v. Allstates Theatres*, 1942, 242 Ala. 417, 6 So.2d 494; *Cable Piano Company v. Estes*, 1921, 206 Ala. 95, 89 So. 372; *accord, American Amusement Company v. East Lake Chutes Company*, 1911, 174 Ala. 526, 56 So. 961. Thus, the defendants in this case are clearly entitled to the defense created by the Alabama statutes.[4]

■ A more substantial issue is whether the application of these qualification statutes impedes interstate commerce so as to be in contravention of the Commerce Clause of the Constitution. The plaintiff's business has both inter-

state and intrastate aspects. And under these circumstances it has been held in *Eli Lilly & Co. v. Sav-On-Drugs*, 1961, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 that such state regulations governing the intrastate functions of the corporation do not violate the Commerce Clause merely because the corporation also engages in interstate commerce.[5]

The plaintiffs rely heavily on the recent Supreme Court decision in *Allenberg Cotton Company, Inc. v. Pittman*, 1974, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195, but that case may be distinguished on its facts for there the interstate aspects of the cotton exchange business engaged in by the corporation were predominant. That case involved an intricate interstate marketing mechanism governing the cotton market. One aspect of this system was the so-called "forward" contract whereby the cotton exchange would purchase cotton not yet grown from the farmer. When the farmer failed to perform on the contract the cotton exchange sought to enforce its contract but was barred by Mississippi qualification statutes which denied corporations without the requisite certificates to enforce contracts in Mississippi courts. This was held to be an infringement upon interstate commerce because such statutes would severely impede the nation-wide marketing system of cotton. Obviously, the facts of this case are much different. Here, there is no unified system of marketing this product but rather contracts are entered on a

3. The determination of whether or not a foreign corporation is doing business within the state of Alabama is a mixed question of law and fact. *See Swicegood v. Century Factors, Inc.*, 1966, 280 Ala. 37, 189 So.2d 776; *Marcus v. J. R. Watkins Company*, 1966, 279 Ala. 584, 188 So.2d 543. Accordingly, the facts of each case are quite important in determining whether or not a sufficient nexus exists for finding that the nonresident corporation is doing business within the state.

4. Although this is a diversity case not brought in Alabama courts we have held that the defense created by these statutes is available to defendants in diversity cases.in federal court. *See Lee v. Great Northern Nekoosa Corporation*, 5 Cir., 1972, 465 F.2d 1132; *Continental*

*Telephone v. Weaver*, 5 Cir., 1969, 410 F.2d 1196; *Advance Industrial Security, Inc. v. William J. Burns International Detective Agency, Inc.*, 5 Cir., 1967, 377 F.2d 236.

5. The Court in *Lilly* pointed up the distinction between intrastate and interstate functions as follows:

"[I]f Lilly is engaged in intrastate as well as interstate aspects of the New Jersey drug business, the State can require it to get a certificate of authority to do business. In such a situation, Lilly could not escape state regulation merely because it is also engaged in interstate commerce." *Id.*, at 279, 81 S.Ct. at 1318 (footnote omitted).

piecemeal basis with particular purchasers. And particularly with respect to the defendants the marketing and supply functions of the plaintiff are localized[6] enough to easily fall under the ambit of a series of transactions which are primarily intrastate and concomitantly the corporation falls under the satrapy of the qualification statutes. *See Allenberg Cotton Company v. Pittman, supra* at 32–33, 95 S.Ct. 260; *Union Brokerage Company v. Jensen,* 1944, 322 U.S. 202, 210–211, 64 S.Ct. 967, 88 L.Ed. 1227, 1233.

We hold that the plaintiff is precluded from enforcing this promissory note because of its failure to comply with the Alabama qualification statutes.

Affirmed.

---

**6.** The relationship between SAR Manufacturing Co. and Dumas Brothers Manufacturing Co. was localized in Alabama except for the production of the product which occurred elsewhere. Here, the promissory note was executed and was to be performed in Alabama, the plaintiff performed sales functions in Alabama, goods were processed and warehoused solely for Dumas Brothers in Alabama, and several persons were employed in the state to perform these functions.

