McCOLLUM AVIATION, INC., etc., Plaintiff,

v.

CIM ASSOCIATES, INC., etc., et al., Defendants.

No. 77–6263–Civ–JLK.

United States District Court,
S. D. Florida,
Miami Division.

Sept. 23, 1977.

Richard A. Gescheidt, Boca Raton, Fla., for plaintiff.

Blackwell, Walker, Gray, Powers, Flick & Hoehl, Colson & Hicks, P. A., Lewis S. Eidson, Jr., Miami, Fla., for defendants.

### ORDER GRANTING MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the motions of defendants Gary L. Self and Cim Associates, Inc.; Phillip Carlton, Jr.; Wilco Aviation and Carroll Williams; and upon the motion of this court to dismiss this cause for lack of subject matter jurisdiction. This court, having considered the record and being fully advised in the premises, finds and concludes that the motions should be granted as to all party-defendants.

Under Rule 8(a)(1) of the Federal Rules of Civil Procedure, plaintiff must set forth "the grounds upon which the court's jurisdiction depends . . . ." Plaintiff-respondent asserts that this court should exercise its jurisdiction over this case on the basis of 28 U.S.C. § 1332—the diversity

jurisdiction provision. However, as will be explained below, plaintiff's failure to demonstrate the extent and nature of the activities from which its cause of action arose renders the complaint defective.

The relationship between state jurisdictional statutes and the judicial power of the federal courts continues to be a complex question. The United States Supreme Court opinion in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) initiated a major change in the direction of diversity jurisdiction. The culmination of the changes initiated by *Erie* was reached in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). These two decisions provide the framework within which questions of diversity jurisdiction are to be determined.

*Background: The Implications of Hanna*

In the present case, a Federal Rule of Civil Procedure—17(b)—and a state jurisdictional statute are in conflict. Under 17(b), the law of the state of incorporation determines a corporation's capacity to sue. But under Florida Statute § 607.354, a corporation transacting business in the state cannot sue in the courts of the state of Florida unless it has obtained authority to transact business there.

The first question for consideration is whether this state statute is applicable in federal court on a diversity jurisdiction matter. This must be answered in the affirmative.

Under the guidelines established by the Supreme Court in *Hanna,*

> when the application of a Federal Rule is at issue, the Rules Enabling Act—and not the Rules of Decision Act as construed by *Erie R. R. v. Tompkins* and other cases— should determine whether federal or state law is to be applied. J. Ely, "The Irrepressible Myth of Erie," 87 *Harv.L. Rev.* 693, 718 (1974).[1]

The analysis provided by the Court in *Hanna* is premised on the fact that the Rules Enabling Act, 28 U.S.C. § 2072, establishes in its first provisions, the authority under which the Federal Rules of Civil Procedure were promulgated. Further, the Enabling Act states that all laws in conflict with rules promulgated under it "shall be of no further force." It is these provisions which are the foundation for the *Hanna* Court's conclusion that in situations where a state rule conflicts with a Federal Rule of Civil Procedure (i. e., one promulgated under the Enabling Act's authority), the Rules Enabling Act provides the relevant standards.

Under the Enabling Act, Rule 17(b) faces a dual test. First, is it a rule of practice and procedure, as authorized by the Act? 17(b) would meet this test. Second, the Act mandates that rules promulgated under its authority (i. e., the Federal Rules) "shall not abridge, enlarge, or modify any substantive right . . . ." Therefore, the second prong of the test asks whether the Federal Rule abridges any existing substantive right?

In treating this latter question, courts cannot utilize the "outcome-determinative" test. As Professor Ely notes, were this the guiding test, it would "eviscerate the Rules and thereby render the [Enabling] Act almost self-defeating" because the invocation of the Federal Rule instead of the conflicting state rule would always be outcome determinative. Thus, *Hanna* relegated the outcome-determinative test to issues arising under the Rules of Decision Act, noting:

> [t]o hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act. *Hanna,* supra, 380 U.S. at 473, 85 S.Ct. at 1145.

The *Hanna* court delineated a new litmus test for questions arising under the Enabling Act. The test relies on the substance/procedure distinction. While these terms are somewhat fluid, courts do have a general understanding of the difference be-

1. Professor Ely was law clerk to Chief Justice Warren at the time *Hanna* was written.

tween the two. As Professor Ely summarizes, a right granted for a non-procedural reason is one granted for a purpose "not having to do with the fairness or efficiency of litigation." J. Ely, supra, at 725. When a rule of law is one which would affect a person's conduct prior to the onset of litigation and has no design to manage ongoing litigation, it is a rule of substance rather than procedure. Thus, for example, a statute of limitations has, amongst its several purposes, the goal of providing "mental ease" for individuals. Such a purpose would be one of substance.[2] A rule can have both procedural and substantive purposes.

■ Utilization of the framework provided by *Hanna* and expounded upon by Professor Ely produces the following result in the present case. Florida Statute § 607.354 is a rule which is highly influential in a person's choice of forum. Moreover, it has a non-litigative purpose of encouraging corporate qualification for the benefit of the state's citizenry. *See Ulmer v. First National Bank of St. Petersburg,* 61 Fla. 460, 55 So. 405 (1911). While the first purpose is arguably on the line between substance and procedure, the latter purpose is not. It is clearly substantive and as such, it must be given precedence over Rule 17(b) because under the Rules Enabling Act, as developed by *Hanna,* a Federal Rule cannot abridge an existing substantive right.

The result arrived at by way of the above analysis has been reached by courts via different routes in the past. Foremost among these cases is *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). In *Woods,* a Tennessee corporation sued a Mississippi resident in a Mississippi federal court under diversity jurisdiction. As in the case *sub judice,*

there was a state "door-closing" statute. The Supreme Court invoked this statute as a jurisdictional bar to plaintiff's claim on the basis of an analysis quite different from that utilized above. In the *Woods* decision, the Court did not counterpose Rule 17(b) with the state jurisdictional statute. In fact, it did not mention 17(b) at all. Thus, the *Woods* opinion proceeds by way of a Rules of Decision Act analysis—entirely appropriate under *Hanna* because no Federal Rule was deemed to be involved—and reached the same result that would have been reached under a Rules Enabling Act analysis.

The *Woods* decision maintains its vitality today with regard to the primacy of state door-closing statutes in diversity cases. However, subsequent decisions have further refined its initial analysis, as will now be explored.

*Post-Woods Refinements:*

The major explication of *Woods* arose in the Supreme Court case of *Eli Lilly & Company v. Sav-On-Drugs, Inc.,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). In this case, an Indiana corporation, unregistered in New Jersey, sued in a New Jersey state court to enjoin defendant-buyer from selling its products at prices lower than those fixed in retail price contracts. Defendant interposed the state door-closing statute as a bar to plaintiff's suit. The Court held that plaintiff was involved in interstate commerce and intrastate commerce. The Court noted that had it not found an involvement in intrastate commerce, it would have been forced to hold the state corporate qualification statute inapplicable because it would have been an undue burden on the plaintiff's rights under the Commerce Clause. The finding of intrastate commerce was premised on the fact that plain-

---

2. As professor Ely notes, "We have, I think, some moderately clear notion of what a procedural rule is—one designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes. Thus, one way of doing things may be chosen over another because it is thought to be more likely to get at the truth, or better calculated to give the parties a fair opportunity to present their sides of the story, or because, and this may point quite the other way, it is a means of promoting the efficiency of the process. Or the protection of the process may proceed at wholesale, as by keeping the size of the docket at a level consistent with giving those cases that are heard the attention they deserve . . . ." J. Ely, supra, at 724–25.

tiff leased office space in New Jersey and employed eighteen detailmen to canvass the state. The Court noted that although their solicitation was not systematic, this was a factor which went only to the *nature* of the intrastate business—not to the question of whether it was intrastate. The fact that plaintiff's business was not exclusively interstate was a sufficient basis for the imposition of the state qualification statute as a prerequisite to the institution of suit in the state's courts.

Further, the Supreme Court also denied plaintiff's contention that even though it transacted some intrastate business in New Jersey, the suit arose from the interstate aspects of its business. The Court reasoned that plaintiff was suing upon a contract which, as an entity, was entirely separable from any particular interstate sale. *Eli Lilly,* supra, 366 U.S. 276, 282–283, 81 S.Ct. 1316, 1320–1321, 6 L.Ed.2d 288.

Thus, in *Eli Lilly,* the Supreme Court indicated that the focus should be upon the constitutional validity of the state statute as applied to the facts of the specific case. The focus was shifted to the Commerce Clause and a reading of the door-closing statute itself, rather than to a consideration of the primacy of the state's jurisdictional rule under *Erie* in a diversity case. In effect, the primary consideration became, and still is, the nature of the relationship of the plaintiff's business contacts to the cause of action at issue. Also, *see Allenberg Cotton Company, Inc. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974). The pre-*Eli Lilly* question of whether a state qualifying statute is applicable in a federal diversity case had become an accepted proposition upon the authority of *Woods.*

█ It thus remains for this court to investigate state court decisions interpreting the Florida "door-closing statute"—§ 607.354. Florida statute § 607.-354 is not applicable by its own terms unless a plaintiff corporation is "transacting business." In the end, the amount of activity which state courts deem these terms to require must be measured against the Commerce Clause to determine the statute's constitutionality.

*The Commerce Clause Test:*

Florida Statute § 607.354 states that "no foreign corporation transacting business in this state" without the requisite authority shall be permitted to sue in state courts. In determining whether a party has transacted business sufficient for the invocation of this state statute, it is necessary to examine state court decisions interpreting it. The latest and most complete of these is *Kar Products, Inc. v. Acker,* 217 So.2d 595 (Fla. 1st D.C.A.1969). In *Kar,* plaintiff was a non-resident corporation. The lower court entered an order staying further prosecution of the claim until plaintiff complied with the requirements of F.S. § 613.04 (which is now F.S. § 607.354). The complaint alleged that defendant, a Florida resident, had breached a contract under which he agreed to act as plaintiff's agent for the sale of plaintiff's products in Florida. The evidence before the court established that the business which plaintiff transacted involved the sale of automotive parts in Florida and that it was exclusively interstate in character.

As expected after *Eli Lilly,* the *Kar* court began its opinion by recognizing that a non-resident corporation has the right to demand and enforce payment in a state court, notwithstanding a door-closing statute, if the goods were sold in interstate commerce and the application of the door-closing statute would constitute an unreasonable burden upon such commerce.

Thus, the transaction of business, by itself, was deemed to be an insufficient ground for the imposition of the door-closing bar. At the same time, the court made clear that plaintiff would not be automatically entitled to utilize the Florida courts (state or federal) simply because the business transacted in Florida was of an interstate character. The court then elucidated the following standards:

for a nonresident corporation to be permitted to maintain an action in the courts of this state without first qualifying to do business as required by F.S. Chapter 613,

F.S.A., the corporation must first show that the only business it transacts in Florida is exclusively of an interstate character, but also that the cause of action sued upon was acquired under the federal constitution or laws in interstate traffic. *Kar,* supra, 217 So.2d at 597–98.

█ With regard to the facts present in the *Kar* case, the court held that the contract of employment was separable from the contracts which defendant, as plaintiff's agent, was employed to procure. The latter contracts involved shipping products into Florida from out of state—a form of interstate commerce. The Court decided, however, that the former contract (i. e., of employment) was sufficiently intrastate that the application of the door-closing statute to a cause of action that arose from such contract was not a violation of the Commerce Clause.

Thus, *Kar* established a two-part test for door-closing determinations. First, plaintiff must demonstrate that the only business it transacts in Florida is of an interstate character. Second, plaintiff must demonstrate that its cause of action was acquired under the federal constitution or laws in interstate traffic.

These two standards on their face do not render the invocation of § 607.354 in the case *sub judice* violative of the Commerce Clause. In deciding this issue, this court can seek guidance from a 1976 Fifth Circuit opinion—*Sar Manufacturing Company, Inc., v. Dumas Bros. Mfg. Co., Inc.,* 526 F.2d 1283 (5th Cir. 1976).

*Sar* was a diversity action in which a Texas corporation sued an Alabama corporation on a promissory note in Alabama federal court. The Fifth Circuit noted preliminarily that there were two issues involved: (i) does plaintiff's activity constitute "doing business" in the state within the applicable door-closing statute, and (ii) if so, does the application of such a statute in *this* factual setting violate the Commerce Clause?

Plaintiff manufactured products outside of Alabama and leased a warehouse inside of the state to which it shipped products for sale and some minor processing. In addition, plaintiff employed several salesmen who spent one-sixth of their time soliciting in Alabama. Performance on the promissory note was to occur in Alabama.

The *Sar* court first noted that these activities constituted "doing business" under the terms of the Alabama statute which required a foreign corporation to qualify with the state before it could *enforce* its contracts in the state's courts. Note that this statute, unlike the one involved in the case *sub judice* and the *Woods* case, involves more than just access to the courts of a state—it denies enforcement of any contracts entered into by such a non-qualified corporation. When applicable, it would render such contracts void. In effect, this statute reaches the merits of a claim, rather than just being a jurisdictional bar.

As to the second prong of the *Kar* test, the *Sar* court decided that there was no unified system of marketing the product involved in the transactions entered between plaintiff and defendant. Contracts were "entered [into] on a piecemeal basis with particular purchasers," and the transactions at issue were deemed to be primarily *intrastate* in nature. *Sar,* supra, 526 F.2d at 1286. As a result, the court decided that plaintiff's marketing and supply functions were sufficiently "localized" that application of the state qualification statute would not violate the Constitution. In reaching this decision, the Fifth Circuit cited the following factors as being especially important:

> the promissory note was executed and was to be performed in Alabama, the plaintiff performed sales functions in Alabama, goods were processed and warehoused solely for [defendant] in Alabama, and several persons were employed in the state to perform these functions. *Sar,* supra, at 1286, n. 6.

As a result the Fifth Circuit decided that plaintiff fell "under the satrapy of the qualification statutes," and it was precluded from enforcing its promissory note. *Sar,* supra, at 1286.

The significance of *Sar* is that the Fifth Circuit—even when faced with a state statute which permitted either party to declare the contract wholly void if one party was a foreign corporation unqualified in the state—was willing to enforce that statute in the presence of substantial interstate commerce. The standards elucidated by *Kar* regarding the enforcement of a jurisdictional statute which denied access to the state's courts—a far less severe sanction than rendering a contract void—must be interpreted in this light.

■ Viewing *Kar* in light of *Sar* leads this court to the conclusion that a greater burden upon interstate commerce should be tolerated when the consequences of invoking the state statute are not as severe as in the *Sar* case—as, for example, in *Kar* and in the case presently before this court. Thus, in judging whether plaintiff has demonstrated satisfactorily that its Florida business is exclusively interstate in character and that the present claim arises under the laws of the Federal Constitution or the laws on interstate traffic, pursuant to the standards delineated by *Kar,* a greater burden upon interstate commerce will be tolerated than was even found acceptable in *Sar.* Plaintiff, in the present case, has only alleged that the offer of sale was sent by telegram to Illinois and that it ordered a sight draft paid at a bank in the same state. It does not indicate the extent of its business; the nature and extent of any negotiations with defendants prior to the creation of the contract; and the other conditions imposed by the contract beyond the provisions of payment. It is therefore

ORDERED AND ADJUDGED that the aforementioned motions to dismiss be and the same are hereby granted with leave to amend the complaint within ten days in accordance with the standards elucidated by the *Kar* decision.

DONE AND ORDERED in chambers at Miami, Florida, this 23rd day of September, 1977.